Jimmy Maurice CLEAVER, Appellant,

v.

Sally Susan Staton CLEAVER, Appellee.

No. 12–94–00217–CV.

Court of Appeals of Texas,
Tyler.

Nov. 27, 1996.

Jerry Bain, Tyler, John S. Ament, Jacksonville, for appellant.

M. Keith Dollahite, Tyler, Eldridge Moak, Jacksonville, for appellee.

Before RAMEY, C.J., and HADDEN and HOLCOMB, JJ.

RAMEY, Chief Justice.

This is an appeal from a trial court's characterization of a spouse's income received from a testamentary trust. Sally Susan Staton Cleaver ("Wife") filed for divorce from Jimmy Maurice Cleaver ("Husband") after a marriage of twenty-one years; the couple had two children. Husband countersued. He has appealed from the divorce decree as it relates only to the court's ruling that the Wife's income from the Sally Staton Trust ("the trust") was not characterized as community property. Husband asserts seven points of error. We will reverse and remand the case to the trial court for determination of the community property interest earned on the funds held in the trust and the amount of the Wife's separate funds that came into the trust that were commingled with that interest; otherwise, the trial court judgment is affirmed.

This is the second appeal involving the same general controversy. After the divorce petition in this suit (the "Divorce Case") was filed, Husband filed a separate cause of action in which he sued Joe Bob Staton ("Joe" or "Trustee") and Staton lumber yard, subsequently incorporated as George Staton Company, Inc. and Staton Materials, Inc., the George D. Staton, Sr. Trust and George Staton, Jr. for fraud, conversion, breach of fiduciary duty and violations of the Texas Trust Code (the "Trust Suit"). Husband appealed from the trial court's dismissal of the Trust Suit on the grounds that Husband could not recover in the capacity in which he sued and did not have standing to bring the suit. In the appeal of the Trust Suit ruling, our number 12–93–00168–CV, the judgment of the trial court was affirmed.

Wife's father, George Staton ("George"), died in 1966. His will established separate equal trusts for his three children. George Jr.'s trust terminated under its terms, and its assets distributed to him. Joe was named Trustee of the two daughters' testamentary trusts. When George died, Wife was thirteen years old. Her trust provided for her general support until she reached twenty-one years of age, whereupon "the income of the trust shall be distributed to the beneficiary semi-annually or more often, the time of such

payments to be in the sole discretion of my Trustee hereunder." Under the will, the Cleaver's children are designated the remainder beneficiaries, and title to the trust res will pass directly from the trust to them after Wife's death.[1]

Prior to his death, George had owned a 25% partnership interest[2] in the Staton lumber business with his brother, Joe, who owned the remaining 75% of the partnership. Under George's will, one third of his 25% interest, or 8.33% of the partnership, passed to Wife's trust. Thus, George's testamentary trusts, with Joe as trustee of each, became Joe's partners in the new Staton partnership formed after George's death.

Wife and Husband were married in 1971; she reached her twenty-first birthday in 1973 at which time the relevant provisions of the testamentary trust became operative. The next year, Joe, the managing partner of the partnership, formed two "C" corporations from partnership assets, the George Staton Company and Staton Materials, Inc. The partners, including Wife's trust, thereby received corresponding interests in the two corporations; Wife's trust became the owner of 8.33% of the stock of the two new corporations.

In his management capacity of the partnership and later of the corporations, Joe decided not to regularly distribute all of the earnings from the Staton business entities to the partners, including the trusts, but to retain the earnings as operating capital for the corporations to expand the Staton businesses. Neither Wife nor Husband complained about Joe's decision to withhold those earnings. The evidence shows that from the time of George's death the Staton entities have grown significantly.

■ Husband's first point of error asserts that the trial court erred in failing to consolidate the two Cleaver cases so that the divorce court could exercise jurisdiction over and appropriately divide all of the parties' properties. No motion by Husband to consolidate the cases, however, is in the trial record. The only explanation is offered in Husband's appellate brief where he asserts: "[I]t is preserved for review here because the motion to consolidate was filed in both cases in the trial court below."

Our review, however, shows that a motion to consolidate the cases was filed in the Trust Suit only. We note no indication in that motion that it, or any similar motion, was filed in this Divorce Suit. Here, the trial court was not requested to rule, and did not do so, on the consolidation of the two cases in this suit. The issue of consolidation of the cases has not been preserved for review in this appeal. TEX.R.APP.P. 52(a); *Camden Machine & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 314 (Tex.App.—Fort Worth 1993, no writ). Husband's first point of error is overruled.

■ In his second point of error, Husband asserts that the trial court erred in holding that the Wife's interest in the trust was her separate property because the Wife failed to offer clear and convincing evidence of such characterization as required by the Texas Family Code. TEX.FAM.CODE ANN. § 5.02 (Vernon 1993); *Harris v. Herbers*, 838 S.W.2d 938, 941 (Tex.App.—Houston [1st Dist.] 1992, no writ). The nature of Wife's relationship to the trust is not disputed. Since reaching her majority, she has been the income beneficiary of the trust. Wife received through distribution only funds actually acquired by the trust that it had received from the Staton businesses. She was bequeathed no interest in the corpus of the trust; she has never owned an interest in the Staton businesses. Wife's income from the trust is her separate property because her interest was established before her marriage and was conveyed by gift or devise. TEX. FAM.CODE ANN. § 5.01 (Vernon 1993); *see In the Matter of the Marriage of Long*, 542 S.W.2d 712 (Tex.Civ.App.—Texarkana 1976, no writ). Husband conceded in his appellate brief as well as in oral argument here that

---

1. From the record, other property was devised to the trust by George, Wife's father. The characterization of these additional properties held in the trust is not challenged here, only the income from the Staton business entities.

2. The partnership was usually referred to as the Staton, Staton and Staton Partnership.

her interest as a beneficiary of the trust is her separate property. We conclude that the trial court's characterization of Wife's interest in the trust as her separate property is supported by clear and convincing evidence. The second point of error is overruled.

In his third point of error, Husband asserts that the trial court erred in finding that no commingling between Wife's trust income and other property had occurred. Husband contends that the Staton businesses' income bequeathed to Wife's trust but not distributed to her, even if it be characterized as her separate property, was nevertheless commingled with "property belonging to others" and must be characterized as the couple's community estate.

The supreme court has declared that all property possessed at the time of the dissolution of a marriage is presumed to be community property. *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex.1965). Husband urges that income was earned on the undistributed income, and that this income was commingled with other earnings retained in the businesses; he furthermore contends that because the commingled funds defied segregation and identification, the statutory presumption that the commingled funds are community would prevail here. *Estate of Hanau v. Hanau*, 730 S.W.2d 663, 667 (Tex. 1987).

■ Assuming that income was earned on the Staton businesses' undistributed income, there was no commingling of such income with "property belonging to others" while the earnings remained in these business entities. First, as to the *partnership* earnings, under the Texas "entity" theory, partnership property is owned by the partnership itself, and such earnings are "neither the community nor separate property of the individual partners" before distribution to those partners. *Marshall v. Marshall*, 735 S.W.2d 587, 594 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). Hence, there has been no commingling of community and separate funds in the retained partnership earnings.

■ Likewise, the retained earnings of the two *corporations* are the property of the respective corporations until distributed. Until distributed to the trust by the corporations, income on the companies' retained earnings is neither the community nor separate property of the spouses but is simply corporate earnings, an asset of that Staton business; there is no commingling of the Cleavers' community and separate funds while the earnings are retained by the corporations before being paid out in dividends.

■ As to the *trust* funds, the trial court found that the trust held approximately $8,193.74 of undistributed income at the time of divorce. A different result obtains as to any *income* that may have been earned *on undistributed funds in the trust* if these monies had been withheld from the beneficiary for a greater period of time than permitted by the terms of the testamentary trust; Wife has had a present possessory interest in such funds that should have been, but had not been, timely distributed to her by the trust, and the income earned on them, if any, is properly characterized as the couple's community property. *In the Matter of the Marriage of Long*, 542 S.W.2d at 712, 717 (Tex. Civ.App.—Texarkana 1976, no writ).

Wife's expert witnesses established that a total of $14,104.66 only had been distributed into the trust [3] during its existence and that approximately $8,193.74 remained in the trust when the divorce was granted in 1994. We conclude that the source of the $8,193.74 was the $14,101.66 that had been distributed into the trust in 1980 and 1981. There is no evidence establishing what, if any, part of the $8,193.74 was interest earned on trust funds that were distributable to Wife.

Husband's third point of error is sustained as to interest earned on the funds actually held in the trust not timely distributed to the Wife; the interest earned, if any, on this undistributed income constituted community property and presumably was commingled with the Wife's undistributed separate property in the trust during this period. Hus-

---

**3.** All of these funds were distributed to the trust in 1980 and 1981. The sources of these distributions were a Johns–Manville corporation divi-

dend and the interest on a certificate of deposit both gifted to the trust by Joe.

band's third point is overruled, however, as to any commingling while the corporate or partnership earnings were retained by those entities prior to their distribution to the trust.

■ By his fourth point of error, Husband urges that the trial court erred in finding that the sum of $8,193.74 only had not been distributed by the trust to the Wife at the time of the divorce. Husband contends that the trust instrument required distribution of its proportionate part of the income of the businesses to the trust and that that "income" should be defined as any increase in wealth attributable to the trust assets, income and imputed income. Significant additional income was generated but retained by the businesses and Husband insists that the trust's part of those earnings should have been distributed to it.

Our focus here is thus directed to the Staton businesses' failure to distribute a proportionate part of all of the business earnings to the trust. Initially, it is observed that the testamentary trust provisions do not mandate that all of the income of the Staton businesses be distributed to the trusts, only that the monies that are in fact delivered to the trusts should be paid to the income beneficiaries on an approximately semiannual schedule.

Joe possessed the stock ownership and executive authority to make the corporate decision to retain earnings. For more than twenty years Joe had adhered to his policy of earnings' retention without complaint. Joe did, however, decide that the federal income tax liability of the respective partners, to wit, the trusts, would be paid from partnership earnings since partnership earnings were not distributed although the partners were subject to annual federal income taxation.[4] INTERNAL REVENUE CODE § 701.

The evidence is undisputed that Husband never owned an interest in the trust, the partnership or the corporations. He has contributed nothing to enhance the value of the Staton business entities. He has never been a beneficiary of the trust. Likewise, the Wife, although a lifetime beneficiary of

income from the trust, never owned an interest in the Staton businesses.

■ As to Joe's decision that Staton *partnership* earnings would be retained by the partnership, Husband contends that by the nature of the partnership relationship, income passes through to the partners as it is earned and may not be retained by the partnership. We do not agree. Partnership management may withhold earnings. *Heilbron v. Stubblefield*, 203 S.W.2d 986, 989 (Tex.Civ.App.—El Paso 1947, writ ref'd n.r.e.). Other than George Jr.'s 8.33% share, Joe controlled all of the partnership interests individually and as trustee. He was the managing partner. He had the exclusive authority to determine the amount of partnership earnings that should be distributed. No cause of action may be asserted against a managing partner absent a breach of trust or fiduciary duty to another partner, as by converting partnership assets to his own use. *Ferguson v. Williams*, 670 S.W.2d 327, 331 (Tex.App.—Austin 1984, writ ref'd n.r.e.). Here, no fiduciary duty arose in favor of the Cleavers because they were not members of the partnership.

■ A similar rationale applies to the Staton *corporations'* management decisions. A claim that corporate dividends have been suppressed implies a breach of duty by the management to the corporation itself, not to the shareholders. *Faour v. Faour*, 789 S.W.2d 620, 621–622 (Tex.App.—Texarkana 1990, writ denied). It is established that corporate management may invest company earnings in corporate assets rather than distributing those earnings to shareholders. *Fain v. Fain*, 93 S.W.2d 1226, 1229 (Tex.Civ.App.—Fort Worth 1936, writ dism'd). The Texas Business Corporation Act does not empower even stockholders to participate in, or control, the management of the corporations; that is the province of the managing board. *Accent Energy Corporation v. Gillman*, 824 S.W.2d 274, 278 (Tex.App.—Amarillo 1992, writ denied). Under the "business judgment" rule, alleged unwise, inexpedient, negligent or imprudent decisions or conduct will not sustain a suit against the manage-

---

4. The income tax liability of the partners was minimal after the corporations were formed.

ment of a corporation by the shareholders. *Langston v. Eagle Pub. Co.*, 719 S.W.2d 612, 616 (Tex.App.—Waco 1986, writ ref'd n.r.e.).

Joe was the chief executive officer and managing director of the corporations, and he was vested and charged with the responsibility of determining the dividends to be paid to the shareholders. The statutory procedure in Texas to attack such business decisions or to assert an alleged breach of management's fiduciary relationship to the corporation is by a derivative suit by stockholders on behalf of the corporation. TEX. BUS.CORP.ACT art. 5.14 (Vernon 1980). Neither of the Cleavers was "a record or beneficial owner of shares" in the Staton corporations; neither had standing to bring a derivative suit, and neither has done so. TEX.BUS.CORP.ACT art. 5.14 B.(1).

Furthermore, Husband's reliance upon *Long* is misplaced because there the trust beneficiary held a present possessory interest in a portion of the corpus of the trust; here, Wife has no present possessory interest in any Staton businesses' earnings until the earnings have been distributed to the trust and not timely delivered to her. We hold that Joe was authorized to decide that corporate earnings could be retained by the corporations, that Joe was not required to direct that additional earnings be distributed by the companies to the trust and that approximately $8,193.74 remained undistributed by the trust to the Wife at divorce. Husband's fourth point of error is overruled.

By his fifth point of error, Husband contends that the trial court erred in concluding that Wife and her family did not breach any duties to Husband. First, it is asserted that Wife breached a fiduciary duty to her Husband. One case is cited: *Carnes v. Meador*, 533 S.W.2d 365 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.). This case stands for the proposition that a trust relationship exists between a husband and wife as to the community property controlled by each spouse. *Id.* at 370. But as stated above, the Wife's income as beneficiary of this trust is properly characterized as her separate property; no fiduciary duty exists between the Husband and Wife as to the handling of her separate

estate as distinguished from the spouses' community property, as the *Carnes* case holds.

Husband also contends that other members of Wife's family breached fiduciary duties to him. This argument is directed toward Joe's conduct as he acted in his capacity as Trustee of Wife's trust.

Initially, we observe that Husband recognizes that no claim is asserted here against Joe and that he is not a party in this Divorce Case. Furthermore, the Trustee has no fiduciary duty arising out of his management of the trust funds to Husband, who is not a beneficiary and who does not occupy any other relationship to the trust. Nevertheless, we will address the Husband's arguments that the Trustee breached his fiduciary duty to him.

First, it is contended that the trust preexisted the Staton corporations, the formation of which created additional impediments to the distribution of income to the trust. As stated, neither Husband nor Wife timely challenged Joe's decision [5] to establish the corporations. Husband was never a partner in the Staton partnership from which the corporations were organized. There were valid business reasons for creating the Staton corporations out of the growing partnership operations; the businesses have continued their substantial growth while operating in the corporate form of business.

Husband also contends that Joe was involved in a conflict of interest by serving both as Trustee of the trust and as the controlling corporate board member that decided that corporate earnings were not to be distributed to the trust. We are cognizant of the potential for abuse where those offices are occupied by the same individual simultaneously. The trial court found, however, that the trustee received no personal benefit arising out of his service as Trustee of the trust. The evidence showed that Joe was George's choice for the Trusteeship; it was not a position that Joe had personally arranged to occupy. There is no evidence that Joe had withdrawn trust funds for his

---

5. As managing partner, not trustee.

personal use or misapplied any assets of the Staton business entities for his own benefit. All Staton partnership and corporate interestholders were treated in an evenhanded manner by Joe; decisions regarding earnings' retention and distribution were applied proportionately to all owners, including himself. No contention is made that Joe received excessive compensation for his service as Trustee. In this trust, a fiduciary relationship existed not only with the beneficiary/Wife but also with the Cleaver children as the remainder beneficiaries; thus, Joe was obliged to consider the interests of all beneficiaries in making earnings distribution decisions. Under these circumstances, we conclude that there is sufficient evidence to support the trial court's finding that Joe has not breached any fiduciary duties to Husband or Wife as Trustee of the trust.

Under this fifth point of error, in his brief Husband also asserts three additional causes of action against Wife and members of her family: civil conspiracy, fraud, and unjust enrichment. But, as stated, Joe and other members of the Staton family have not been cited as parties in this Divorce Case. The treatment of these additional claims in the briefs is abbreviated, and these claims were not mentioned in the oral arguments. Husband cites only one case in his brief treatment of the validity of the three additional causes of action: *Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp.*, 435 S.W.2d 854 (Tex.1968), a civil conspiracy case wherein the court held that the evidence did not support the submission of a jury issue on that theory of recovery. Furthermore, no ruling or mention is made of these three additional causes of action in the divorce decree itself nor in the court's findings of fact and conclusions of law. We hold that absent a trial court ruling relevant to these claims, there is nothing for us to review. TEX.R.APP.P. 52(a); *Camden Machine & Tool, Inc.*, 870 S.W.2d at 314. For all of the reasons stated, Husband's fifth point of error is overruled.

The parties have discussed Husband's last two points of error together; we shall do likewise. In his sixth point of error, Husband asserts that the trial court made irrelevant findings and conclusions. The alleged irrelevant findings appear to relate to matters that were directly in issue in the Trust Suit but Husband contends are irrelevant to the disposition of this Divorce Case. In his seventh and last point, Husband contends that these alleged irrelevant findings together with the court's erroneous characterization of Wife's trust income demonstrate the trial court's disregard of its responsibility to make a just and right division of all of the parties' property in the divorce decree.

As stated, some of the trial court's findings and conclusions relate to the conduct of individuals who are not parties to this Divorce Case. It appears, however, that Joe's conduct is relevant to Husband's contentions in this Divorce Case. The findings do not appear to be inappropriate to the issues raised. Nevertheless, if certain findings are irrelevant to the disposition of this case, they may be disregarded.

It appears that these two assignments of error, six and seven, are reassertions that Husband has been thwarted in invoking the trial court's consideration of Wife's trust income in the court's division of the marital estate. These concerns are addressed in connection with the first five points of error. Husband's points of error six and seven are overruled.

The judgment of the trial court is **reversed** and **remanded** to the trial court for a determination of whether interest was earned on trust funds held but undistributed to the beneficiary/Wife in contravention of the trust's terms, the amount of interest earned and the amount, if any, of trust funds commingled with the interest. In all other respects, the judgment of the trial court is **affirmed.**

HOLCOMB, J., not participating.