TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00238-CV






Mary Laverne Smith, Appellant


v.


David Dillard Grayson, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. D-1-FM-09-004132, HONORABLE JEFF L. ROSE, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 Appellant Mary Laverne Smith appeals the trial court's final decree of divorce, which
incorporated the court's prior partial summary judgment. In eight issues, Smith contends that the
trial court erred in granting partial summary judgment that appellee David Dillard Grayson's
partnership interest was his separate property, abused its discretion in awarding reimbursement
claims and attorney's fees, and erroneously valued property awarded to her. For the reasons that
follow, we affirm the final decree of divorce.


FACTUAL AND PROCEDURAL BACKGROUND


 Mary Smith and David Grayson were married in 2005. Approximately one year
before the marriage, Smith moved from Hawaii to Austin to live with Grayson. Grayson opened a
bank account for Smith and provided her financial assistance for bills and activities in the year prior
to the marriage. Both parties brought property into the marriage. Grayson's property included a
limited partnership interest and a residence. Smith's property included three real properties. The
parties also acquired property after the marriage. There were no children of the marriage.


The Parties' Property


 In 2003, Grayson acquired an interest of 48,400 units in Emergency Service Partners,
L.P., a limited partnership (ESP). During the marriage, although Grayson did not purchase any
additional units, his proportional percentage interest in ESP increased as a result of the partnership's
purchase of interests from withdrawing partners. In accordance with the terms of the partnership
agreement, Grayson's share of each year's partnership profits was added to his capital account
balance. While Grayson received distributions from his capital account during the marriage, ESP
retained a portion of his share of income in his capital account to use as operating expenses.

 At the time of the marriage, Grayson also owned a residence in Austin in which he
and Smith lived during their marriage. In addition to living expenses, the parties expended
community funds to pay for maintenance, insurance, and ad valorem taxes on the residence during
the marriage and received federal income tax deductions for payment of ad valorem taxes.

 Smith's property included three real properties in Virginia. During the marriage,
Smith and Grayson used community funds to pay for operating expenses, mortgage payments, and
capital improvements on the properties. The properties generated rental income. Smith and Grayson
also received federal income tax benefits for depreciation and deductions for interest payments on
the properties.

 Soon after they were married, Smith and Grayson purchased a duplex in Austin (the
Valley Hill property), which Smith managed as a rental property. Also after they were married, their
accountant discovered that Grayson had underpaid his pre-marriage federal income taxes. Grayson
and Smith paid this tax liability from community funds.


The Divorce Proceedings


 Grayson filed for divorce in August 2009, seeking a disproportionate share of the
community estate based on claims that included Smith's fault in the breakup of the marriage, fraud
on the community, reimbursement to the community estate for expenditures on Smith's Virginia
properties, and attorney's fees. Smith filed a counterclaim seeking reimbursement to the community
estate for expenditures on Grayson's separate property residence and payment of Grayson's
pre-marriage federal income tax liability. During the divorce proceedings, the parties jointly retained
their accountant to categorize sources of income and expenses from the date of the marriage through
2009. The parties also entered into several stipulations, narrowing the issues presented at trial. The
stipulations included agreements that the residence Grayson brought into the marriage was his
separate property, the fair rental value of the residence was $2,300 per month, and the Virginia
properties were Smith's separate property. The parties also stipulated that the community estate
expended $8,458 in payment of Grayson's pre-marriage federal income tax liabilities.


Partial Summary Judgment


 Grayson filed a motion for partial summary judgment that the limited partnership
interest in ESP was his separate property. The summary judgment evidence included documentation
of Grayson's purchase and ownership of his partnership units and the partnership agreement, with
authenticating affidavits from Grayson and his attorney; excerpts from the deposition of ESP chief
financial officer Lucinda Lopez; and a summary of partnership income allocations and distributions
to Grayson from 2005 through 2008, with estimates for 2009, prepared by Lopez.

 Smith filed a response and cross-motion for summary judgment arguing that all of
the partnership income allocated to Grayson, not just the funds actually distributed, was income on
separate property after marriage and therefore was community property. Smith further contended
that the partnership's retention of a portion of Grayson's allocation of profits constituted
contributions to the partnership of community funds and resulted in commingling, creating a fact
issue as to the characterization of Grayson's partnership interest as separate or community property.

 At a hearing immediately prior to trial, the trial court granted Grayson's motion for
partial summary judgment. (1) Although Smith had filed a cross-motion for summary judgment
addressing the issues raised in Grayson's motion as well as additional issues, the record shows that
Smith's motion was not addressed at the hearing, the trial court made no express ruling on Smith's
motion, and Smith did not request one. Smith appeals only the trial court's grant of Grayson's
motion for partial summary judgment, as incorporated into the final divorce decree.


Trial


 Smith demanded a jury, and the case proceeded to trial before a jury for two days, at
which point Smith requested the jury be dismissed, Grayson agreed, and the trial concluded as a trial
to the bench. The trial court heard testimony from eight witnesses, including Grayson, Smith, the

parties' accountant Rita Brantner, real estate appraiser Charles Gray, and the parties' attorneys. 
Grayson and Smith testified generally regarding their relationship, assets, and finances. The primary
factual disputes concerned income and expenditures from the Virginia properties, on which Brantner
testified; the value of the Valley Hill property, to which Gray attested; and the reasonableness of the
parties' attorney's fees, on which the parties' attorneys offered conflicting testimony.


Grayson's Testimony


 Grayson testified that Smith was at fault for the breakup of the marriage, they did not
spend much time together, and their relationship soon became adversarial. He further testified that
during the divorce proceedings he learned that Smith had had an affair.

 In connection with his claim for attorney's fees, Grayson testified that he filed for
divorce without an attorney and suggested to Smith that they negotiate a property division by
agreement before hiring counsel to draft final documents, but after she obtained an attorney, they
were not able to work collaboratively. In support of his claim of fraud on the community, Grayson
testified that Smith kept the rental income from her Virginia properties in her separate checking
account and paid expenses on the properties from community funds without his knowledge. He also
testified that until the divorce proceedings, he had no access to any of her banking or credit card
account information.


Smith's Testimony


 Smith admitted having an affair and said she was very ashamed of it. Regarding the
Virginia rental properties, Smith testified she initially deposited the rental income into a joint
account but that, although she did not recall requesting it, at some point Grayson's name was
removed from the account. She also testified that she never deposited income from the rental
properties into the joint account where they deposited their earnings. She stated that at times she told
Grayson that she could not afford the expenses on the Virginia properties and needed to use
community funds but that she may have taken money from the joint account to pay her credit card
bills without telling him.


Attorneys' Testimony


 Grayson's attorney Richel Rivers testified generally regarding the nature and value
of the legal services performed in the case. She testified that she has been practicing since 1976 and
is board certified in civil trial, civil appellate, and family law and stated her opinion that the conduct
of Smith and her attorney during the divorce proceeding unreasonably increased the costs of the case.
She identified several factors which she believed contributed to the increased costs. Rivers stated
that one factor was that Smith's attorney made unreasonable claims on her behalf, including claims
that Grayson's partnership interest acquired before marriage was community property and that
Grayson had breached a marriage contract. Another factor, according to Rivers, was the "abuse of
process" and lack of familiarity with Travis County local rules of Smith's attorney. Rivers testified
that opposing counsel made "blatantly false statements" in pleadings, sought ex parte relief, set
unnecessary hearings, made repeated requests for information he already had, deposed Rivers only
to question her primarily about the substantive law of the case, sent inflammatory and provocative
correspondence, and caused delays. She further testified that in her opinion, the cost to her client
should have reasonably been between $15,000 and $30,000, but that as a result of these factors,
Grayson would end up owing approximately $130,000 through trial.

 Smith's attorney, Robert Hardy, Jr., testified that he was licensed in 1974 and his
practice has focused primarily on litigation and business matters. He stated that he accepted this
divorce case because there were no children involved and he viewed a divorce case without children
primarily as a business lawsuit. Hardy further testified that he had particular difficulty getting
temporary support for his client and getting the cooperation of Grayson's partnership in discovery,
which accounted in part for the delays. He also stated that he believes the claims regarding the
partnership interest and the contract to marry to be valid claims. Hardy testified that his primary
concern was his ethical duty to represent his client fully.


The Trial Court's Ruling


 At the conclusion of trial, Smith filed a number of post-trial motions, all of which the
trial court denied. (2) The parties submitted post-trial briefing, and the trial court issued a letter ruling
outlining a property division. Because the parties were unable to agree on a form of divorce decree, 
Grayson filed a motion to enter and supplemental motion to enter. After a hearing on the motion, the
trial court enter a final decree granting the divorce on the grounds of insupportability and adultery.

 In the decree, the trial court confirmed Grayson's interest in ESP as his separate
property. The decree also included awards of equitable reimbursement. The trial court ordered
Smith's separate estate to reimburse the community estate $58,472 for community funds expended
to benefit her Virginia properties, and granted Grayson a lien against the properties to secure
payment. In addition, Grayson was awarded reimbursement to his separate estate from the
community estate in the amount of $59,219 for the undisputed benefit to the estate from the fair
market rental value and property tax deductions, offset by the community's payment of $64,367 in
ad valorem taxes, property insurance, and maintenance.

 The trial court further ordered that "[t]o effect an equitable division of the estate of
the parties and as part of the division . . . Smith shall bear seventy percent (70%) . . . and [Grayson]
shall bear thirty percent (30%) of both parties' attorney's fees incurred through trial." The final
decree also awarded the Valley Hill property to Smith. The trial court subsequently entered Findings
of Fact and Conclusions of Law and Additional Findings of Fact and Conclusions of Law, including
a finding that the Valley Hill property's fair market value was $197,924. This appeal followed.


ANALYSIS



Partial Summary Judgment


 In her first issue, Smith challenges that portion of the final divorce decree
incorporating the trial court's partial summary judgment that Grayson's interest in ESP was his
separate property. We review the trial court's decision to grant summary judgment de novo. 
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant's favor. Mack Trucks, Inc. v. Tamez,
206 S.W.3d 572, 582 (Tex. 2006); Dorsett, 164 S.W.3d at 661. A motion for summary judgment
is properly granted when the movant establishes that there are no genuine issues of material fact and
that it is entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a(c); Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003). When the trial court does not specify
the grounds for its summary judgment, the appellate court must affirm the summary judgment if any
of the theories presented to the trial court and preserved for appellate review are meritorious. Knott,
128 S.W.3d at 216.

 Smith argues that (i) all of the partnership income Grayson earned during the
marriage, whether distributed or retained, was community property; (ii) ESP used Grayson's retained
community property income to buy out other partners' interests, resulting in an increased interest for
Grayson acquired during the marriage, which should be characterized as community property; and
(iii) the retention of a portion of community income in Grayson's capital account with his separate
property resulted in commingling so that the presumption of community property applies to the
entire partnership interest. Grayson counters that (i) only the distributed income was community
property and the retained funds were partnership property, which are not subject to characterization
as separate or community property; (ii) ESP's buyouts of other partners' interests were made by the
partnership with partnership property, increasing only Grayson's proportional percentage interest,
not his actual interest; and (iii) because the retained funds were partnership property, there was no
commingling. The issue turns, then, on the characterization of the portion of Grayson's partnership
income that was retained by ESP for operating expenses.

 The starting point in the division of a marital estate is the characterization of
the parties' property as separate or community. Allen v. Allen, 704 S.W.2d 600, 603 (Tex.
App.--Fort Worth 1986, no writ). Property acquires its characterization at the inception of title. 
Henry S. Miller Co. v. Evans, 452 S.W.2d 426, 430 (Tex. 1970). Property owned by a spouse before
the marriage is separate property. Tex. Const. art. XVI, § 15; Tex. Fam. Code Ann. § 3.001(1) (West
2006). Property possessed by the spouses upon the dissolution of the marriage is presumed to be
community property. Tex. Fam. Code Ann. § 3.003(a) (West 2006); Estate of Hanau v. Hanau,
730 S.W.2d 663, 667 (Tex. 1987). A party claiming property as separate has the burden to overcome
that presumption by clear and convincing evidence. Tex. Fam. Code Ann. § 3.003(b); Harris
v. Harris, 765 S.W.2d 798, 802 (Tex. App.--Houston [14th Dist.] 1989, writ denied). "Clear and
convincing" evidence means the measure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex.
Fam. Code Ann. § 101.007(b); In re C.H., 89 S.W.3d 17, 25 (Tex. 2002).

 To overcome the presumption of community, a spouse must trace and clearly
identify the property claimed as separate. Hanau, 730 S.W.2d at 667; Cockerham v. Cockerham,
527 S.W.2d 162, 167 (Tex. 1975). If separate and community property have been so commingled
as to defy segregation and identification, the statutory presumption prevails. Hanau, 730 S.W.2d
at 667 (citing Tarver v. Tarver, 394 S.W.2d 780 (Tex. 1965)). When separate property has not been
commingled or its identity can be traced, however, the statutory presumption is dispelled. Harris,
765 S.W.2d at 802.

 With these principles in mind, we turn to the characterization of Grayson's
partnership interest. The supreme court has determined that the only partnership-related property
a trial court can award upon dissolution of a partner's marriage is the partnership interest, not the
partnership property. McKnight v. McKnight, 543 S.W.2d 863, 867-68 (Tex. 1976). A partnership
"interest" is a partner's right to receive his share of the profits and losses and to receive distributions. 
Tex. Bus. Orgs. Code Ann. §1.002(68) (West Pamph. 2009). "Partnership property" is not property
of the individual partners; a partner's "interest" does include an ownership interest in partnership
property. Id. §152.101 (West Pamph. 2009); Marshall v. Marshall, 735 S.W.2d 587, 594 (Tex.
App.--Dallas 1987, writ ref'd n.r.e.). Nor does a partner retain an ownership interest in his capital
contribution; rather, the contribution becomes partnership property. Lifshutz v. Lifshutz, 199 S.W.3d
9, 26 (Tex. App.--San Antonio 2006, pet. denied). Thus, a partner's right to receive his share of the
profits is the only partnership right subject to characterization. Marshall, 735 S.W.2d at 594.

 The undisputed summary judgment evidence established that Grayson acquired his
interest in ESP prior to the marriage and purchased no additional units during the marriage and that
his partnership interest earned $172,630 in income during the marriage. It was also undisputed that
Grayson received $154,454 of that income in distributions; that ESP retained $18,176 of that income
in Grayson's partnership account for operating expense; and that during the marriage, ESP acquired
units from retiring or withdrawing partners, increasing Grayson's percentage of ownership.

 We find Smith's argument that the portion of Grayson's income retained by ESP
constituted community property unpersuasive. Partnership earnings are owned by the partnership
prior to distribution to the partners and cannot be characterized as either separate or community
property. Cleaver v. Cleaver, 935 S.W.2d 491, 494 (Tex. App.--Tyler 1996, no writ). "[A]
partnership can be an effective means of preserving the separate property character of assets
contributed to the partnership and the undistributed income thereon." Lifshutz, 199 S.W.3d at 26
(citation omitted) (emphasis added). The partner's spouse has no interest in the assets of a
partnership until they are actually distributed. Id. The portion of partnership income retained in
Grayson's capital account was therefore partnership property, and as such was neither the separate
nor community property of either party. See Cleaver, 935 S.W.2d at 494.

 Because we conclude that the portion of Grayson's income retained by ESP was
partnership property, we also find Smith's additional arguments on this issue unconvincing. 
Assuming ESP used the funds in Grayson's capital account in purchasing the units of withdrawing
partners, those funds and the repurchased units were partnership property. See Lifshutz, 199 S.W.3d
at 26; Cleaver, 935 S.W.2d at 494. In addition, the summary judgment evidence showed that the
only resulting increase in Grayson's interest was in the proportional percentage of his interest
resulting from a reduction in the total number of partnership units and that there was no actual
increase to Grayson's interest. Even if the repurchase of units were somehow construed to result in
an actual increase in Grayson's interest, the increase in interest would remain partnership property
and would not constitute property acquired after marriage until distributed. See Lifshutz, 199 S.W.3d
at 26; Cleaver, 935 S.W.2d at 494. Finally, because the portion of Grayson's partnership income
retained by ESP was partnership property, its retention in Grayson's capital account could not result
in commingling of community and separate funds as a matter of law. See Lifshutz, 199 S.W.3d at
26; Cleaver, 935 S.W.2d at 494. We conclude that the trial court correctly found that there were no
genuine issues of material fact and that Grayson was entitled to judgment on this issue as a matter
of law and properly incorporated the ruling into its final divorce decree. We overrule Smith's
first issue.


Equitable Reimbursement Claims

 

 In her second, third, and fifth issues, Smith challenges the trial court's determinations 
of the parties' claims for reimbursement. (3) The right of reimbursement is purely an equitable one that
arises when the funds or assets of one marital estate are used to benefit another estate. Vallone
v. Vallone, 644 S.W.2d 455, 458 (Tex. 1982). Permissible reimbursement may run from community
estate to separate estate, from separate estate to community estate, or from separate estate to separate
estate. Alsenz v. Alsenz, 101 S.W.3d 648, 655 (Tex. App.--Houston [1st Dist.] 2003, pet. denied)
(citing Dakan v. Dakan, 83 S.W.2d 620, 627 (Tex. 1935)). The party seeking reimbursement bears
the burden of proving entitlement to it. Jensen v. Jensen, 665 S.W.2d 107, 110 (Tex. 1984).

 In evaluating a claim for reimbursement, the trial court shall apply equitable
principles to determine whether to allow the claim. Former Tex. Fam. Code Ann. § 7.007(b)(1). 
The court should also consider any offsetting benefits to the estate whose assets were expended. Id.
§ 3.408(c); Penick v. Penick, 783 S.W.2d 194, 197-98 (Tex. 1988). The party seeking to offset a
claim bears the burden of proof with respect to the offset. Former Tex. Fam. Code Ann. § 3.408(e);
In re Cigainero, 305 S.W.3d 798, 802 (Tex. App.--Texarkana 2010, no pet.). Benefits for the use
and enjoyment of property may be offset against a claim for reimbursement for expenditures to
benefit a marital estate on property that does not involve a claim for economic contribution to the
property. Former Tex. Fam. Code Ann. § 3.408(d).

 We review a trial court's decision concerning a reimbursement claim for an abuse of
discretion. See Penick, 783 S.W.2d at 198. The test for abuse of discretion is whether the trial
court's ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. 
K-Mart Corp. v. Honeycutt, 24 S.W.3d 357, 360 (Tex. 2000). We must give great latitude to the trial
court in applying equitable principles to value a claim for reimbursement. Penick, 783 S.W.2d at
198. "The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as
that discretion subsequently exercised by the trial court in making a 'just and right' division of the
community property." Id.

 Under an abuse of discretion standard, legal and factual sufficiency challenges to the
evidence are not independent grounds of error but are relevant factors in assessing whether the trial
court abused its discretion. Zeifman v. Michels, 212 S.W.3d 582, 587 (Tex. App.--Austin 2006, pet.
denied); In re D.M., 191 S.W.3d 381, 393 (Tex. App.--Austin 2006, pet. denied). In reviewing the
legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment,
crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence
unless a reasonable fact finder could not. City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005). 
The test is "whether the evidence at trial would enable reasonable and fair-minded people to reach
the [judgment] under review." Id. at 827. In reviewing factual sufficiency of the evidence, we
consider and weigh all of the evidence in the record, and we may overturn a judgment only if it is
so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).


Virginia Rental Properties


 In her second issue, Smith claims that the trial court erred in ordering her separate
estate to reimburse the community estate for expenses paid on her Virginia rental properties and
refusing to consider the rental income on the properties as an offsetting benefit to Grayson's
reimbursement claim. Brantner's uncontroverted testimony established that the community estate
expended $69,163 in community funds on the Virginia properties and received a depreciation tax
benefit of $10,691. Grayson requested that a reimbursement claim for $58,472, the amount
expended offset by the depreciation, be awarded to him as a money judgment against Smith and that
an equitable lien be imposed on the Virginia properties to secure payment. A court may impose an
equitable lien on separate property to secure reimbursement rights. See Heggen v. Pemelton,
836 S.W.2d 145, 146 (Tex. 1992).

 Regarding the offset, it was undisputed that the properties generated $54,198 in rental
income during the marriage. It was also undisputed that Smith collected and deposited the rental
income into her separate account, and Grayson testified that this occurred without his knowledge or
consent. The trial court found that the community received no benefit from the rental income,
Smith's handling of it constituted constructive fraud on the community estate, and it would be
inequitable to offset Grayson's reimbursement claim with the rental income. Constructive fraud,
also known as wasting, involves the transfer of community assets by one spouse without the other
spouse's knowledge or consent. See Loaiza v. Loaiza, 130 S.W.3d 894, 901 (Tex. App.--Fort
Worth 2004, no pet.). A trial court can consider fraud on the community and award a
disproportionate division, a money judgment, or some combination of the two to compensate the
spouse for the lost interest in the community estate. Schlueter v. Schlueter, 975 S.W.2d 584, 588-90
(Tex. 1998).

 As the trier of fact, the trial court was the sole judge of the credibility of the
witnesses. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986). The evidence was
sufficient to allow reasonable and fair-minded people to conclude that the community estate received
no benefit from the rental income, see City of Keller, 168 S.W.3d at 827, and we cannot say that the
trial court's decision is so against the great weight and preponderance of the evidence as to be clearly
wrong and manifestly unjust. See Cain, 709 S.W.2d at 176. We therefore conclude that the evidence
was legally and factually sufficient to support the trial court's ruling and that the trial court did not
abuse its discretion in ordering that Smith's separate estate reimburse the community estate for the
community funds expended on the Virginia properties and declining to offset the claim with the
rental income. See Penick, 783 S.W.2d at 198. We overrule Smith's second issue.


Pre-marriage Income Tax Liability


 In her third issue, Smith contends that the trial court erred in failing to order
Grayson's separate estate to reimburse the community estate $8,458 for the its payment of his
pre-marriage federal income tax liability. The parties stipulated to the amount, but not to the
reimbursement claim itself. The record shows that the trial court considered Grayson's undisputed
pre-marriage support of Smith and "all the equities" and found that it was inequitable to grant the
claim. Additional "equities" considered by the court included undisputed evidence that Smith
deposited rental income from the community's Valley Hill property into her separate account and
of her adultery. In a divorce granted in whole or in part on a fault basis, as here, a trial court may
consider the fault of one spouse in the breakup of the marriage when making a property division. 
Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981). On this record, we conclude the evidence was
legally and factually sufficient, and in light of the great latitude afforded a trial court in determining
disbursement claims, we conclude that the trial court did not abuse its discretion in denying Smith's
claim for reimbursement for payment of the pre-marriage tax liability. See City of Keller,
168 S.W.3d at 827; Cain, 709 S.W.2d at 176; Penick, 783 S.W.2d at 198. We overrule Smith's
third issue.


The Parties' Residence


 In her fifth issue, Smith complains that the trial court erred in requiring her to
reimburse Grayson for the rental value of Grayson's home, in which they resided during the
marriage. Smith asserted a claim for equitable reimbursement for community funds expended on
the residence, which the parties stipulated was Grayson's separate property. Grayson sought an
offset for the fair rental value benefit to the community estate for the parties' residing in the
residence during the marriage and for federal income tax deductions for ad valorem taxes paid on
the property. Brantner offered uncontroverted testimony that the community estate expended
$64,367 for payment of ad valorem taxes, property insurance, and maintenance and received a
benefit of $6,286 in deductions for property taxes paid. The parties stipulated to a monthly fair
market rental value of $2,300.

 The trial court found that the community received a benefit in the amount of
$117,300, which represented the stipulated monthly rental value of $2,300 times the number of
months Smith and Grayson were married, accepted Brantner's testimony regarding the benefit for
property tax deductions, and determined that Grayson had met the burden of proving his offsetting
claims. Applying the offsetting benefits of $123,526 against the community estate expenditures of
$64,367, the trial court found a net detriment to the community estate of $59,219 and awarded
Grayson a reimbursement claim against the community estate in that amount in favor of his
separate estate.

 On appeal, Smith's only complaint regarding her reimbursement claim is the trial
court's inclusion of the rental value as an offset. Smith argues that the trial court erred in including
"rental income" as an offset because "[r]ental income received during marriage is community
property." In this case, however, there was no rental income. Rather, the trial court considered the
benefit to the community of the parties' usage of the residence and valued that benefit by applying
the agreed-to fair market rental value. "Reimbursement for expenditures made on property may be
offset by benefits such as usage by the [estate] making these expenditures." Grossnickle
v. Grossnickle, 935 S.W.2d 830, 841 (Tex. App.--Texarkana 1996, writ denied) (citing Penick,
783 S.W.2d at 195). The undisputed evidence was legally and factually sufficient, and we cannot
conclude that it was an abuse of the trial court's discretion to apply the rental value of the residence
as an offset Smith's claim for reimbursement. See City of Keller, 168 S.W.3d at 827; Cain,
709 S.W.2d at 176; Penick, 783 S.W.2d at 198. We overrule Smith's fifth issue.


Attorney's Fees


 In her fourth issue, Smith complains of the trial court's award of attorney's fees.
Because attorney's fees is a factor the court may consider in making an equitable division of the
estate, we review the trial court's decision on fees for an abuse of discretion. See Murff, 615 S.W.2d
at 698-99. A clear abuse of discretion is shown only if the division of the property is manifestly
unjust. See Mann v. Mann, 607 S.W.2d 243, 245 (Tex. 1980). The record shows that both parties
expended community funds in payment of attorney's fees, and the trial court found that through trial
Smith incurred $60,000 in fees, while Grayson incurred $125,000 in fees. The trial court ordered
that "[t]o effect an equitable division of the parties' estate and as part of the division, and based on
unreasonable conduct of Mary Smith and her counsel," Smith should bear seventy percent and
Grayson thirty percent of the total fees both parties incurred through trial. The court then awarded
Grayson a judgment in the amount of $69,500 for attorney's fees, costs, and expenses. In lieu of the
judgment, the court awarded Grayson a correspondingly greater portion of the community interest
in his ESP 401(k) account and released the judgment as part of the just and right division of the
community estate.

 Smith challenges the trial court's determinations regarding attorney's fees on several
grounds. First, she argues that the trial court's award of attorney's fees was error because there is
no statutory authority for the recovery of attorney's fees in divorce actions that do not involve
children. Smith is correct that there is no statutory authority for the recovery of attorney's fees in
a divorce action. However, a court may consider reasonable attorney's fees, along with the parties'
circumstances and needs, in effecting a just and right division of the estate. Murff, 615 S.W.2d at
699; Wilson v. Wilson, 44 S.W.3d 597, 599-600 (Tex. App.--Fort Worth 2001, no pet.); Austin
v. Austin, 619 S.W.2d 290, 292 (Tex. App.--Austin 1981, no writ) (although attorney's fees not
recoverable in divorce suit under any specific statute or as costs, fees may be awarded as part of
court's equitable power to make just and right division of community property).

 Smith also contends that because the parties' attorney's fees were not community
debts, the trial court erred by not requiring Grayson to reimburse the community estate for
community funds expended on his attorney's fees. Smith asserts that she expended approximately
$9,300, and Grayson approximately $50,000, in community funds and that the court erred by not
including in the judgment a credit to the community estate for these amounts. However, the record
shows that after ordering that Smith bear 70% of the attorney's fees, or $129,500, the trial court
reduced that amount by $60,000. Thus, the record supports that the trial court included a credit for
the community funds expended by the parties on attorney's fees. Further, as in its decision to award
fees as part of the division, the trial court has broad discretion in determining the amount. See Murff,
615 S.W.2d at 698-99.

 Finally, Smith challenges the trial court's finding of unreasonable conduct on the part
of Smith and her attorney as a basis for the award of attorney's fees. The trial court found that the
offensive conduct included asserting unreasonable claims, unreasonably contentious behavior, and
demanding a jury trial and then requesting a waiver of the jury on the third day of trial. Smith
contends that the trial court's findings indicate that it must have concluded that it was unreasonable
for Smith's attorney to represent her interest faithfully and zealously. However, there was ample
evidence in the record and testimony by Grayson's attorney showing that the conduct of Smith and
her attorney unreasonably increased Grayson's attorney's fees. The trial court reasonably could have
credited this evidence and the testimony of Grayson's attorney.

 On the record before us, we conclude that the evidence was legally and factually
sufficient to support the trial court's award of attorney's fees, and we cannot say that the award was
manifestly unjust so as to constitute a clear abuse of discretion. See id. at 827; Cain, 709 S.W.2d
at 176; Penick, 783 S.W.2d at 198. We overrule Smith's fourth issue.


Value of Valley Hill Property


 In her sixth issue, Smith contends that there was no evidence to support the trial
court's finding of $197,924 as the fair market value of the Valley Hill property. The evidence
included three conflicting values for the Valley Hill property. Grayson offered into evidence the
2009 Travis Central Appraisal District's appraisal of the property, which stated the value at
$197,924. Smith testified that she received the valuation and disagreed with it but "missed the time
line" to protest. She also stated that if she were to sell the property, she would put it on the market
for $150,000. Real estate appraiser Charles Gray offered the third value of $118,000. Gray testified
that he is a licensed appraiser but is not a member of the appraisal institute and that there were
limited available sales of similar and comparable properties in the area.

 Smith argues that Gray's and Smith's values were the only legally competent
evidence on this issue. In support of this argument, Smith cites Houston Lighting & Power Co.
v. Fisher, 559 S.W.2d 682, 685-87 (Tex. Civ. App.--Houston [14th Dist] 1977, writ ref'd n.r.e.),
for the proposition that tax valuations do not constitute evidence of fair market value as a matter of
law. Smith is correct in her assertion that under the reasoning of Fisher, evidence of the tax
appraisal would be considered inadmissible hearsay and therefore not probative evidence. See id.
at 686; see also Kuehn v. Kuehn, 594 S.W.2d 158, 161 (Tex. Civ. App.--Houston [14th Dist.] 1980,
no writ) (evidence of value of real estate for taxation purpose is hearsay and cannot support
finding of fact even in absence of objection); Perkins v. Springstun, 557 S.W.2d 343, 345 (Tex.
Civ. App.--Austin 1977, writ ref'd n.r.e.) (hearsay evidence admitted without objection has no
probative value).

 Those cases, however, were decided before the adoption of the Texas Rules of
Evidence. (4) Since their adoption, the rules of evidence have provided that "[i]nadmissable
hearsay admitted without objection shall not be denied probative value merely because it is
hearsay."  Tex. R. Evid. 802. As the supreme court has observed, "[Rule 802] is not ambiguous
and requires no explication." Texas Commerce Bank v. New, 3 S.W.3d 515, 517 (Tex. 1999)
(holding unobjected-to hearsay is probative evidence); see also In re R.L., No.03-99-00334-CV,
2000 Tex. App. LEXIS 471, at *5 (Tex. App.--Austin 2000, no pet.) (observing proposition that
unobjected-to hearsay lacks probative value rendered invalid by rule 802). Despite Smith's assertion
that she objected to the appraisal and the trial court overruled her objection, the record shows that the
appraisal was admitted without objection. The tax appraisal, therefore, constituted some probative
evidence of the property's value on which the trial court could have relied. New, 3 S.W.3d at 517.

 The value of a community asset on which there is disputed evidence is a question of
fact. Tex. Fam. Code Ann. § 6.711(2) (West 2006). As the trier of fact, it was up to the trial court
to judge the credibility of the witnesses, weigh the testimony, accept or reject any testimony, and
resolve conflicts in the evidence. Leesboro Corp. v. Hendrickson, 322 S.W.3d 922, 926-27
(Tex. App.--Austin 2010, no pet.); Liberty Mut. Ins. Co. v. Burk, 295 S.W.3d 771, 777 (Tex.
App.--Fort Worth 2009, no pet.). We "will not disturb a trial court's resolution of conflicting
evidence that turns on the credibility or weight of the evidence." Ennis v. Loisear, 164 S.W.3d 698,
706 (Tex. App.--Austin 2005, no pet.) (citing Benoit v. Wilson, 239 S.W.2d 792, 796 (Tex. 1951)). 
As long as the evidence falls "within [the] zone of reasonable disagreement," we cannot substitute
our judgment for that of the fact finder. See City of Keller, 168 S.W.3d at 822.

 The trial court heard the conflicting opinions on the value of the property, rejected
the opinions of Gray and Smith, and accepted the value in the tax appraisal. On the record before
us, we conclude that the evidence of the property's value was legally and factually sufficient, and
in light of the broad discretion vested in the trial court in dividing the property of parties in a divorce,
we cannot say that the trial court abused its discretion in its valuation of the Valley Hill property. 
See City of Keller, 168 S.W.3d at 822; Cain, 709 S.W.2d at 176; Penick, 783 S.W.2d at 198. We
overrule Smith's sixth issue.

Division of Community Estate

 In her seventh and eighth issues, Smith complains that the trial court abused its
discretion in dividing the community estate because the effect was to award the entire community
estate and part of Smith's separate estate to Grayson. Smith fails to cite any authority or portion of
the record in support of these arguments and has therefore waived these issues. See Tex. R. App.
P. 38.1(i) (requiring that contentions on appeal be supported by clear and concise arguments and
appropriate citations to authorities and record); In re A.D.A., 287 S.W.3d 382, 389 (Tex.
App.--Texarkana 2009, no pet.). Even had Smith not waived issues seven and eight, however, we
find these arguments to be cumulative of errors Smith asserts in issues one through six. We overrule
Smith's seventh and eighth issues.


CONCLUSION


 Having overruled Smith's issues, we affirm the district court's final divorce decree. (5)


 __________________________________________

 Melissa Goodwin, Justice

Before Justices Puryear, Henson, and Goodwin

Affirmed

Filed: October 12, 2011
1. Grayson also filed, and the trial court granted, a motion for partial summary judgment that
Smith's cause of action for breach of the promise to marry and/or the marriage contract was not a
valid claim on which relief could be granted. Smith does not appeal this determination.
2. Smith also sought mandamus relief in this Court for the denial of her Motion
to Reopen Evidence, Motion to Strike Evidence, Motion for Mistrial, and Motion
to Modify Temporary Orders, which this Court denied. See In re Mary Laverne
Smith, No. 03-10-00179-CV,Tex. App.--Austin, Apr. 14, 2010, available at
http://www.3rdcoa.courts.state.tx.us/opinions/event.asp?EventID=406619.
3. Because Grayson filed for divorce on August 4, 2009, this case is governed by the statutes
then in effect pertaining to equitable reimbursement claims, former Texas Family Code sections
3.408 and 7.007(b). See Act of May 18, 2001, 77th Leg., R.S., ch. 838, §2, 2001 Tex. Gen. Laws
1679, 1682, amended by Act of April 30, 2007, 80th Leg., R.S., ch. 51, § 1, 2007 Tex. Gen. Laws
48, 48, repealed by Act of May 19, 2009, 81st Leg., R.S., ch. 768, §11(5), 2009 Tex. Gen. Laws
1950, 1953; Act of May 18, 2001, 77th Leg. R.S., ch. 838, §5, 2001 Tex. Gen. Laws 1679, 1683-84,
amended by Act of May 19, 2009, 81st Leg., R.S. ch. 768, § 7, 2009 Tex. Gen. Laws 1950, 1952. 
For ease of reference, we refer to the statutes then in effect as former family code sections 3.408
and 7.007(b).
4. Adopted in 1982, to be effective on September 1, 1983.
5. Smith filed a motion for leave to file a supplemental reply brief in response to Grayson's
objection to oral argument, which is pending before this Court. We dismiss the motion as moot.