# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00238-CV

**Mary Laverne Smith, Appellant**

**v.**

**David Dillard Grayson, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
## NO. D-1-FM-09-004132, HONORABLE JEFF L. ROSE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Mary Laverne Smith appeals the trial court's final decree of divorce, which incorporated the court's prior partial summary judgment. In eight issues, Smith contends that the trial court erred in granting partial summary judgment that appellee David Dillard Grayson's partnership interest was his separate property, abused its discretion in awarding reimbursement claims and attorney's fees, and erroneously valued property awarded to her. For the reasons that follow, we affirm the final decree of divorce.

### FACTUAL AND PROCEDURAL BACKGROUND

Mary Smith and David Grayson were married in 2005. Approximately one year before the marriage, Smith moved from Hawaii to Austin to live with Grayson. Grayson opened a bank account for Smith and provided her financial assistance for bills and activities in the year prior to the marriage. Both parties brought property into the marriage. Grayson's property included a

limited partnership interest and a residence. Smith's property included three real properties. The parties also acquired property after the marriage. There were no children of the marriage.

**The Parties' Property**

In 2003, Grayson acquired an interest of 48,400 units in Emergency Service Partners, L.P., a limited partnership (ESP). During the marriage, although Grayson did not purchase any additional units, his proportional percentage interest in ESP increased as a result of the partnership's purchase of interests from withdrawing partners. In accordance with the terms of the partnership agreement, Grayson's share of each year's partnership profits was added to his capital account balance. While Grayson received distributions from his capital account during the marriage, ESP retained a portion of his share of income in his capital account to use as operating expenses.

At the time of the marriage, Grayson also owned a residence in Austin in which he and Smith lived during their marriage. In addition to living expenses, the parties expended community funds to pay for maintenance, insurance, and ad valorem taxes on the residence during the marriage and received federal income tax deductions for payment of ad valorem taxes.

Smith's property included three real properties in Virginia. During the marriage, Smith and Grayson used community funds to pay for operating expenses, mortgage payments, and capital improvements on the properties. The properties generated rental income. Smith and Grayson also received federal income tax benefits for depreciation and deductions for interest payments on the properties.

Soon after they were married, Smith and Grayson purchased a duplex in Austin (the Valley Hill property), which Smith managed as a rental property. Also after they were married, their

2

accountant discovered that Grayson had underpaid his pre-marriage federal income taxes. Grayson and Smith paid this tax liability from community funds.

**The Divorce Proceedings**

Grayson filed for divorce in August 2009, seeking a disproportionate share of the community estate based on claims that included Smith's fault in the breakup of the marriage, fraud on the community, reimbursement to the community estate for expenditures on Smith's Virginia properties, and attorney's fees. Smith filed a counterclaim seeking reimbursement to the community estate for expenditures on Grayson's separate property residence and payment of Grayson's pre-marriage federal income tax liability. During the divorce proceedings, the parties jointly retained their accountant to categorize sources of income and expenses from the date of the marriage through 2009. The parties also entered into several stipulations, narrowing the issues presented at trial. The stipulations included agreements that the residence Grayson brought into the marriage was his separate property, the fair rental value of the residence was $2,300 per month, and the Virginia properties were Smith's separate property. The parties also stipulated that the community estate expended $8,458 in payment of Grayson's pre-marriage federal income tax liabilities.

**Partial Summary Judgment**

Grayson filed a motion for partial summary judgment that the limited partnership interest in ESP was his separate property. The summary judgment evidence included documentation of Grayson's purchase and ownership of his partnership units and the partnership agreement, with authenticating affidavits from Grayson and his attorney; excerpts from the deposition of ESP chief

3

financial officer Lucinda Lopez; and a summary of partnership income allocations and distributions to Grayson from 2005 through 2008, with estimates for 2009, prepared by Lopez.

Smith filed a response and cross-motion for summary judgment arguing that all of the partnership income allocated to Grayson, not just the funds actually distributed, was income on separate property after marriage and therefore was community property. Smith further contended that the partnership's retention of a portion of Grayson's allocation of profits constituted contributions to the partnership of community funds and resulted in commingling, creating a fact issue as to the characterization of Grayson's partnership interest as separate or community property.

At a hearing immediately prior to trial, the trial court granted Grayson's motion for partial summary judgment.[1] Although Smith had filed a cross-motion for summary judgment addressing the issues raised in Grayson's motion as well as additional issues, the record shows that Smith's motion was not addressed at the hearing, the trial court made no express ruling on Smith's motion, and Smith did not request one. Smith appeals only the trial court's grant of Grayson's motion for partial summary judgment, as incorporated into the final divorce decree.

**Trial**

Smith demanded a jury, and the case proceeded to trial before a jury for two days, at which point Smith requested the jury be dismissed, Grayson agreed, and the trial concluded as a trial to the bench. The trial court heard testimony from eight witnesses, including Grayson, Smith, the

---

[1] Grayson also filed, and the trial court granted, a motion for partial summary judgment that Smith's cause of action for breach of the promise to marry and/or the marriage contract was not a valid claim on which relief could be granted. Smith does not appeal this determination.

parties' accountant Rita Brantner, real estate appraiser Charles Gray, and the parties' attorneys. Grayson and Smith testified generally regarding their relationship, assets, and finances. The primary factual disputes concerned income and expenditures from the Virginia properties, on which Brantner testified; the value of the Valley Hill property, to which Gray attested; and the reasonableness of the parties' attorney's fees, on which the parties' attorneys offered conflicting testimony.

**Grayson's Testimony**

Grayson testified that Smith was at fault for the breakup of the marriage, they did not spend much time together, and their relationship soon became adversarial. He further testified that during the divorce proceedings he learned that Smith had had an affair.

In connection with his claim for attorney's fees, Grayson testified that he filed for divorce without an attorney and suggested to Smith that they negotiate a property division by agreement before hiring counsel to draft final documents, but after she obtained an attorney, they were not able to work collaboratively. In support of his claim of fraud on the community, Grayson testified that Smith kept the rental income from her Virginia properties in her separate checking account and paid expenses on the properties from community funds without his knowledge. He also testified that until the divorce proceedings, he had no access to any of her banking or credit card account information.

**Smith's Testimony**

Smith admitted having an affair and said she was very ashamed of it. Regarding the Virginia rental properties, Smith testified she initially deposited the rental income into a joint

5

account but that, although she did not recall requesting it, at some point Grayson's name was removed from the account. She also testified that she never deposited income from the rental properties into the joint account where they deposited their earnings. She stated that at times she told Grayson that she could not afford the expenses on the Virginia properties and needed to use community funds but that she may have taken money from the joint account to pay her credit card bills without telling him.

**Attorneys' Testimony**

Grayson's attorney Richel Rivers testified generally regarding the nature and value of the legal services performed in the case. She testified that she has been practicing since 1976 and is board certified in civil trial, civil appellate, and family law and stated her opinion that the conduct of Smith and her attorney during the divorce proceeding unreasonably increased the costs of the case. She identified several factors which she believed contributed to the increased costs. Rivers stated that one factor was that Smith's attorney made unreasonable claims on her behalf, including claims that Grayson's partnership interest acquired before marriage was community property and that Grayson had breached a marriage contract. Another factor, according to Rivers, was the "abuse of process" and lack of familiarity with Travis County local rules of Smith's attorney. Rivers testified that opposing counsel made "blatantly false statements" in pleadings, sought ex parte relief, set unnecessary hearings, made repeated requests for information he already had, deposed Rivers only to question her primarily about the substantive law of the case, sent inflammatory and provocative correspondence, and caused delays. She further testified that in her opinion, the cost to her client

should have reasonably been between $15,000 and $30,000, but that as a result of these factors, Grayson would end up owing approximately $130,000 through trial.

Smith's attorney, Robert Hardy, Jr., testified that he was licensed in 1974 and his practice has focused primarily on litigation and business matters. He stated that he accepted this divorce case because there were no children involved and he viewed a divorce case without children primarily as a business lawsuit. Hardy further testified that he had particular difficulty getting temporary support for his client and getting the cooperation of Grayson's partnership in discovery, which accounted in part for the delays. He also stated that he believes the claims regarding the partnership interest and the contract to marry to be valid claims. Hardy testified that his primary concern was his ethical duty to represent his client fully.

**The Trial Court's Ruling**

At the conclusion of trial, Smith filed a number of post-trial motions, all of which the trial court denied.[2] The parties submitted post-trial briefing, and the trial court issued a letter ruling outlining a property division. Because the parties were unable to agree on a form of divorce decree, Grayson filed a motion to enter and supplemental motion to enter. After a hearing on the motion, the trial court enter a final decree granting the divorce on the grounds of insupportability and adultery.

---

[2] Smith also sought mandamus relief in this Court for the denial of her Motion to Reopen Evidence, Motion to Strike Evidence, Motion for Mistrial, and Motion to Modify Temporary Orders, which this Court denied. *See In re Mary Laverne Smith*, No. 03-10-00179-CV,Tex. App.—Austin, Apr. 14, 2010, *available at* http://www.3rdcoa.courts.state.tx.us/opinions/event.asp?EventID=406619.

In the decree, the trial court confirmed Grayson's interest in ESP as his separate property. The decree also included awards of equitable reimbursement. The trial court ordered Smith's separate estate to reimburse the community estate $58,472 for community funds expended to benefit her Virginia properties, and granted Grayson a lien against the properties to secure payment. In addition, Grayson was awarded reimbursement to his separate estate from the community estate in the amount of $59,219 for the undisputed benefit to the estate from the fair market rental value and property tax deductions, offset by the community's payment of $64,367 in ad valorem taxes, property insurance, and maintenance.

The trial court further ordered that "[t]o effect an equitable division of the estate of the parties and as part of the division . . . Smith shall bear seventy percent (70%) . . . and [Grayson] shall bear thirty percent (30%) of both parties' attorney's fees incurred through trial." The final decree also awarded the Valley Hill property to Smith. The trial court subsequently entered Findings of Fact and Conclusions of Law and Additional Findings of Fact and Conclusions of Law, including a finding that the Valley Hill property's fair market value was $197,924. This appeal followed.

## ANALYSIS

### Partial Summary Judgment

In her first issue, Smith challenges that portion of the final divorce decree incorporating the trial court's partial summary judgment that Grayson's interest in ESP was his separate property. We review the trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary

judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Dorsett*, 164 S.W.3d at 661. A motion for summary judgment is properly granted when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). When the trial court does not specify the grounds for its summary judgment, the appellate court must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Knott*, 128 S.W.3d at 216.

Smith argues that (i) all of the partnership income Grayson earned during the marriage, whether distributed or retained, was community property; (ii) ESP used Grayson's retained community property income to buy out other partners' interests, resulting in an increased interest for Grayson acquired during the marriage, which should be characterized as community property; and (iii) the retention of a portion of community income in Grayson's capital account with his separate property resulted in commingling so that the presumption of community property applies to the entire partnership interest. Grayson counters that (i) only the distributed income was community property and the retained funds were partnership property, which are not subject to characterization as separate or community property; (ii) ESP's buyouts of other partners' interests were made by the partnership with partnership property, increasing only Grayson's proportional percentage interest, not his actual interest; and (iii) because the retained funds were partnership property, there was no

9

commingling. The issue turns, then, on the characterization of the portion of Grayson's partnership income that was retained by ESP for operating expenses.

The starting point in the division of a marital estate is the characterization of the parties' property as separate or community. *Allen v. Allen*, 704 S.W.2d 600, 603 (Tex. App.—Fort Worth 1986, no writ). Property acquires its characterization at the inception of title. *Henry S. Miller Co. v. Evans*, 452 S.W.2d 426, 430 (Tex. 1970). Property owned by a spouse before the marriage is separate property. Tex. Const. art. XVI, § 15; Tex. Fam. Code Ann. § 3.001(1) (West 2006). Property possessed by the spouses upon the dissolution of the marriage is presumed to be community property. Tex. Fam. Code Ann. § 3.003(a) (West 2006); *Estate of Hanau v. Hanau*, 730 S.W.2d 663, 667 (Tex. 1987). A party claiming property as separate has the burden to overcome that presumption by clear and convincing evidence. Tex. Fam. Code Ann. § 3.003(b); *Harris v. Harris*, 765 S.W.2d 798, 802 (Tex. App.—Houston [14th Dist.] 1989, writ denied). "Clear and convincing" evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code Ann. § 101.007(b); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

To overcome the presumption of community, a spouse must trace and clearly identify the property claimed as separate. *Hanau*, 730 S.W.2d at 667; *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975). If separate and community property have been so commingled as to defy segregation and identification, the statutory presumption prevails. *Hanau*, 730 S.W.2d at 667 (citing *Tarver v. Tarver*, 394 S.W.2d 780 (Tex. 1965)). When separate property has not been

10

commingled or its identity can be traced, however, the statutory presumption is dispelled. *Harris*, 765 S.W.2d at 802.

With these principles in mind, we turn to the characterization of Grayson's partnership interest. The supreme court has determined that the only partnership-related property a trial court can award upon dissolution of a partner's marriage is the partnership interest, not the partnership property. *McKnight v. McKnight*, 543 S.W.2d 863, 867–68 (Tex. 1976). A partnership "interest" is a partner's right to receive his share of the profits and losses and to receive distributions. Tex. Bus. Orgs. Code Ann. §1.002(68) (West Pamph. 2009). "Partnership property" is not property of the individual partners; a partner's "interest" does include an ownership interest in partnership property. *Id*. §152.101 (West Pamph. 2009); *Marshall v. Marshall*, 735 S.W.2d 587, 594 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). Nor does a partner retain an ownership interest in his capital contribution; rather, the contribution becomes partnership property. *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 26 (Tex. App.—San Antonio 2006, pet. denied). Thus, a partner's right to receive his share of the profits is the only partnership right subject to characterization. *Marshall*, 735 S.W.2d at 594.

The undisputed summary judgment evidence established that Grayson acquired his interest in ESP prior to the marriage and purchased no additional units during the marriage and that his partnership interest earned $172,630 in income during the marriage. It was also undisputed that Grayson received $154,454 of that income in distributions; that ESP retained $18,176 of that income in Grayson's partnership account for operating expense; and that during the marriage, ESP acquired units from retiring or withdrawing partners, increasing Grayson's percentage of ownership.

11

We find Smith's argument that the portion of Grayson's income retained by ESP constituted community property unpersuasive. Partnership earnings are owned by the partnership prior to distribution to the partners and cannot be characterized as either separate or community property. *Cleaver v. Cleaver*, 935 S.W.2d 491, 494 (Tex. App.—Tyler 1996, no writ). "[A] partnership can be an effective means of preserving the separate property character of assets contributed to the partnership *and the undistributed income thereon*." *Lifshutz*, 199 S.W.3d at 26 (citation omitted) (emphasis added). The partner's spouse has no interest in the assets of a partnership until they are actually distributed. *Id.* The portion of partnership income retained in Grayson's capital account was therefore partnership property, and as such was neither the separate nor community property of either party. *See Cleaver*, 935 S.W.2d at 494.

Because we conclude that the portion of Grayson's income retained by ESP was partnership property, we also find Smith's additional arguments on this issue unconvincing. Assuming ESP used the funds in Grayson's capital account in purchasing the units of withdrawing partners, those funds and the repurchased units were partnership property. *See Lifshutz*, 199 S.W.3d at 26; *Cleaver*, 935 S.W.2d at 494. In addition, the summary judgment evidence showed that the only resulting increase in Grayson's interest was in the proportional percentage of his interest resulting from a reduction in the total number of partnership units and that there was no actual increase to Grayson's interest. Even if the repurchase of units were somehow construed to result in an actual increase in Grayson's interest, the increase in interest would remain partnership property and would not constitute property acquired after marriage until distributed. *See Lifshutz*, 199 S.W.3d at 26; *Cleaver*, 935 S.W.2d at 494. Finally, because the portion of Grayson's partnership income

12

retained by ESP was partnership property, its retention in Grayson's capital account could not result in commingling of community and separate funds as a matter of law. *See Lifshutz*, 199 S.W.3d at 26; *Cleaver*, 935 S.W.2d at 494. We conclude that the trial court correctly found that there were no genuine issues of material fact and that Grayson was entitled to judgment on this issue as a matter of law and properly incorporated the ruling into its final divorce decree. We overrule Smith's first issue.

**Equitable Reimbursement Claims**

In her second, third, and fifth issues, Smith challenges the trial court's determinations of the parties' claims for reimbursement.[3] The right of reimbursement is purely an equitable one that arises when the funds or assets of one marital estate are used to benefit another estate. *Vallone v. Vallone*, 644 S.W.2d 455, 458 (Tex. 1982). Permissible reimbursement may run from community estate to separate estate, from separate estate to community estate, or from separate estate to separate estate. *Alsenz v. Alsenz*, 101 S.W.3d 648, 655 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (citing *Dakan v. Dakan*, 83 S.W.2d 620, 627 (Tex. 1935)). The party seeking reimbursement bears the burden of proving entitlement to it. *Jensen v. Jensen*, 665 S.W.2d 107, 110 (Tex. 1984).

---

[3] Because Grayson filed for divorce on August 4, 2009, this case is governed by the statutes then in effect pertaining to equitable reimbursement claims, former Texas Family Code sections 3.408 and 7.007(b). *See* Act of May 18, 2001, 77th Leg., R.S., ch. 838, §2, 2001 Tex. Gen. Laws 1679, 1682, *amended by* Act of April 30, 2007, 80th Leg., R.S., ch. 51, § 1, 2007 Tex. Gen. Laws 48, 48, *repealed by* Act of May 19, 2009, 81st Leg., R.S., ch. 768, §11(5), 2009 Tex. Gen. Laws 1950, 1953; Act of May 18, 2001, 77th Leg. R.S., ch. 838, §5, 2001 Tex. Gen. Laws 1679, 1683–84, *amended by* Act of May 19, 2009, 81st Leg., R.S. ch. 768, § 7, 2009 Tex. Gen. Laws 1950, 1952. For ease of reference, we refer to the statutes then in effect as former family code sections 3.408 and 7.007(b).

13

In evaluating a claim for reimbursement, the trial court shall apply equitable principles to determine whether to allow the claim. Former Tex. Fam. Code Ann. § 7.007(b)(1). The court should also consider any offsetting benefits to the estate whose assets were expended. *Id.* § 3.408(c); *Penick v. Penick*, 783 S.W.2d 194, 197–98 (Tex. 1988). The party seeking to offset a claim bears the burden of proof with respect to the offset. Former Tex. Fam. Code Ann. § 3.408(e); *In re Cigainero*, 305 S.W.3d 798, 802 (Tex. App.—Texarkana 2010, no pet.). Benefits for the use and enjoyment of property may be offset against a claim for reimbursement for expenditures to benefit a marital estate on property that does not involve a claim for economic contribution to the property. Former Tex. Fam. Code Ann. § 3.408(d).

We review a trial court's decision concerning a reimbursement claim for an abuse of discretion. *See Penick*, 783 S.W.2d at 198. The test for abuse of discretion is whether the trial court's ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). We must give great latitude to the trial court in applying equitable principles to value a claim for reimbursement. *Penick*, 783 S.W.2d at 198. "The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as that discretion subsequently exercised by the trial court in making a 'just and right' division of the community property." *Id.*

Under an abuse of discretion standard, legal and factual sufficiency challenges to the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied); *In re D.M.*, 191 S.W.3d 381, 393 (Tex. App.—Austin 2006, pet. denied). In reviewing the

14

legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The test is "whether the evidence at trial would enable reasonable and fair-minded people to reach the [judgment] under review." *Id.* at 827. In reviewing factual sufficiency of the evidence, we consider and weigh all of the evidence in the record, and we may overturn a judgment only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

*Virginia Rental Properties*

In her second issue, Smith claims that the trial court erred in ordering her separate estate to reimburse the community estate for expenses paid on her Virginia rental properties and refusing to consider the rental income on the properties as an offsetting benefit to Grayson's reimbursement claim. Brantner's uncontroverted testimony established that the community estate expended $69,163 in community funds on the Virginia properties and received a depreciation tax benefit of $10,691. Grayson requested that a reimbursement claim for $58,472, the amount expended offset by the depreciation, be awarded to him as a money judgment against Smith and that an equitable lien be imposed on the Virginia properties to secure payment. A court may impose an equitable lien on separate property to secure reimbursement rights. *See Heggen v. Pemelton*, 836 S.W.2d 145, 146 (Tex. 1992).

Regarding the offset, it was undisputed that the properties generated $54,198 in rental income during the marriage. It was also undisputed that Smith collected and deposited the rental

15

income into her separate account, and Grayson testified that this occurred without his knowledge or consent. The trial court found that the community received no benefit from the rental income, Smith's handling of it constituted constructive fraud on the community estate, and it would be inequitable to offset Grayson's reimbursement claim with the rental income. Constructive fraud, also known as wasting, involves the transfer of community assets by one spouse without the other spouse's knowledge or consent. *See Loaiza v. Loaiza*, 130 S.W.3d 894, 901 (Tex. App.—Fort Worth 2004, no pet.). A trial court can consider fraud on the community and award a disproportionate division, a money judgment, or some combination of the two to compensate the spouse for the lost interest in the community estate. *Schlueter v. Schlueter*, 975 S.W.2d 584, 588–90 (Tex. 1998).

As the trier of fact, the trial court was the sole judge of the credibility of the witnesses. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). The evidence was sufficient to allow reasonable and fair-minded people to conclude that the community estate received no benefit from the rental income, *see City of Keller*, 168 S.W.3d at 827, and we cannot say that the trial court's decision is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176. We therefore conclude that the evidence was legally and factually sufficient to support the trial court's ruling and that the trial court did not abuse its discretion in ordering that Smith's separate estate reimburse the community estate for the community funds expended on the Virginia properties and declining to offset the claim with the rental income. *See Penick*, 783 S.W.2d at 198. We overrule Smith's second issue.

16

*Pre-marriage Income Tax Liability*

In her third issue, Smith contends that the trial court erred in failing to order Grayson's separate estate to reimburse the community estate $8,458 for the its payment of his pre-marriage federal income tax liability. The parties stipulated to the amount, but not to the reimbursement claim itself. The record shows that the trial court considered Grayson's undisputed pre-marriage support of Smith and "all the equities" and found that it was inequitable to grant the claim. Additional "equities" considered by the court included undisputed evidence that Smith deposited rental income from the community's Valley Hill property into her separate account and of her adultery. In a divorce granted in whole or in part on a fault basis, as here, a trial court may consider the fault of one spouse in the breakup of the marriage when making a property division. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). On this record, we conclude the evidence was legally and factually sufficient, and in light of the great latitude afforded a trial court in determining disbursement claims, we conclude that the trial court did not abuse its discretion in denying Smith's claim for reimbursement for payment of the pre-marriage tax liability. *See City of Keller*, 168 S.W.3d at 827; *Cain*, 709 S.W.2d at 176; *Penick*, 783 S.W.2d at 198. We overrule Smith's third issue.

*The Parties' Residence*

In her fifth issue, Smith complains that the trial court erred in requiring her to reimburse Grayson for the rental value of Grayson's home, in which they resided during the marriage. Smith asserted a claim for equitable reimbursement for community funds expended on the residence, which the parties stipulated was Grayson's separate property. Grayson sought an

17

offset for the fair rental value benefit to the community estate for the parties' residing in the residence during the marriage and for federal income tax deductions for ad valorem taxes paid on the property. Brantner offered uncontroverted testimony that the community estate expended $64,367 for payment of ad valorem taxes, property insurance, and maintenance and received a benefit of $6,286 in deductions for property taxes paid. The parties stipulated to a monthly fair market rental value of $2,300.

The trial court found that the community received a benefit in the amount of $117,300, which represented the stipulated monthly rental value of $2,300 times the number of months Smith and Grayson were married, accepted Brantner's testimony regarding the benefit for property tax deductions, and determined that Grayson had met the burden of proving his offsetting claims. Applying the offsetting benefits of $123,526 against the community estate expenditures of $64,367, the trial court found a net detriment to the community estate of $59,219 and awarded Grayson a reimbursement claim against the community estate in that amount in favor of his separate estate.

On appeal, Smith's only complaint regarding her reimbursement claim is the trial court's inclusion of the rental value as an offset. Smith argues that the trial court erred in including "rental income" as an offset because "[r]ental income received during marriage is community property." In this case, however, there was no rental income. Rather, the trial court considered the benefit to the community of the parties' usage of the residence and valued that benefit by applying the agreed-to fair market rental value. "Reimbursement for expenditures made on property may be offset by benefits such as usage by the [estate] making these expenditures." *Grossnickle*

18

*v. Grossnickle*, 935 S.W.2d 830, 841 (Tex. App.—Texarkana 1996, writ denied) (citing *Penick*, 783 S.W.2d at 195). The undisputed evidence was legally and factually sufficient, and we cannot conclude that it was an abuse of the trial court's discretion to apply the rental value of the residence as an offset Smith's claim for reimbursement. *See City of Keller*, 168 S.W.3d at 827; *Cain*, 709 S.W.2d at 176; *Penick*, 783 S.W.2d at 198. We overrule Smith's fifth issue.

**Attorney's Fees**

In her fourth issue, Smith complains of the trial court's award of attorney's fees. Because attorney's fees is a factor the court may consider in making an equitable division of the estate, we review the trial court's decision on fees for an abuse of discretion. *See Murff*, 615 S.W.2d at 698–99. A clear abuse of discretion is shown only if the division of the property is manifestly unjust. *See Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980). The record shows that both parties expended community funds in payment of attorney's fees, and the trial court found that through trial Smith incurred $60,000 in fees, while Grayson incurred $125,000 in fees. The trial court ordered that "[t]o effect an equitable division of the parties' estate and as part of the division, and based on unreasonable conduct of Mary Smith and her counsel," Smith should bear seventy percent and Grayson thirty percent of the total fees both parties incurred through trial. The court then awarded Grayson a judgment in the amount of $69,500 for attorney's fees, costs, and expenses. In lieu of the judgment, the court awarded Grayson a correspondingly greater portion of the community interest in his ESP 401(k) account and released the judgment as part of the just and right division of the community estate.

Smith challenges the trial court's determinations regarding attorney's fees on several grounds. First, she argues that the trial court's award of attorney's fees was error because there is no statutory authority for the recovery of attorney's fees in divorce actions that do not involve children. Smith is correct that there is no *statutory* authority for the recovery of attorney's fees in a divorce action. However, a court may consider reasonable attorney's fees, along with the parties' circumstances and needs, in effecting a just and right division of the estate. *Murff*, 615 S.W.2d at 699; *Wilson v. Wilson*, 44 S.W.3d 597, 599–600 (Tex. App.—Fort Worth 2001, no pet.); *Austin v. Austin*, 619 S.W.2d 290, 292 (Tex. App.—Austin 1981, no writ) (although attorney's fees not recoverable in divorce suit under any specific statute or as costs, fees may be awarded as part of court's equitable power to make just and right division of community property).

Smith also contends that because the parties' attorney's fees were not community debts, the trial court erred by not requiring Grayson to reimburse the community estate for community funds expended on his attorney's fees. Smith asserts that she expended approximately $9,300, and Grayson approximately $50,000, in community funds and that the court erred by not including in the judgment a credit to the community estate for these amounts. However, the record shows that after ordering that Smith bear 70% of the attorney's fees, or $129,500, the trial court reduced that amount by $60,000. Thus, the record supports that the trial court included a credit for the community funds expended by the parties on attorney's fees. Further, as in its decision to award fees as part of the division, the trial court has broad discretion in determining the amount. *See Murff*, 615 S.W.2d at 698–99.

Finally, Smith challenges the trial court's finding of unreasonable conduct on the part of Smith and her attorney as a basis for the award of attorney's fees. The trial court found that the offensive conduct included asserting unreasonable claims, unreasonably contentious behavior, and demanding a jury trial and then requesting a waiver of the jury on the third day of trial. Smith contends that the trial court's findings indicate that it must have concluded that it was unreasonable for Smith's attorney to represent her interest faithfully and zealously. However, there was ample evidence in the record and testimony by Grayson's attorney showing that the conduct of Smith and her attorney unreasonably increased Grayson's attorney's fees. The trial court reasonably could have credited this evidence and the testimony of Grayson's attorney.

On the record before us, we conclude that the evidence was legally and factually sufficient to support the trial court's award of attorney's fees, and we cannot say that the award was manifestly unjust so as to constitute a clear abuse of discretion. *Se*e *id.* at 827; *Cain*, 709 S.W.2d at 176; *Penick*, 783 S.W.2d at 198. We overrule Smith's fourth issue.

**Value of Valley Hill Property**

In her sixth issue, Smith contends that there was no evidence to support the trial court's finding of $197,924 as the fair market value of the Valley Hill property. The evidence included three conflicting values for the Valley Hill property. Grayson offered into evidence the 2009 Travis Central Appraisal District's appraisal of the property, which stated the value at $197,924. Smith testified that she received the valuation and disagreed with it but "missed the time line" to protest. She also stated that if she were to sell the property, she would put it on the market for $150,000. Real estate appraiser Charles Gray offered the third value of $118,000. Gray testified

21

that he is a licensed appraiser but is not a member of the appraisal institute and that there were limited available sales of similar and comparable properties in the area.

Smith argues that Gray's and Smith's values were the only legally competent evidence on this issue. In support of this argument, Smith cites *Houston Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 685–87 (Tex. Civ. App.—Houston [14th Dist] 1977, writ ref'd n.r.e.), for the proposition that tax valuations do not constitute evidence of fair market value as a matter of law. Smith is correct in her assertion that under the reasoning of *Fisher*, evidence of the tax appraisal would be considered inadmissible hearsay and therefore not probative evidence. *See id.* at 686; *see also Kuehn v. Kuehn*, 594 S.W.2d 158, 161 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ) (evidence of value of real estate for taxation purpose is hearsay and cannot support finding of fact even in absence of objection); *Perkins v. Springstun*, 557 S.W.2d 343, 345 (Tex. Civ. App.—Austin 1977, writ ref'd n.r.e.) (hearsay evidence admitted without objection has no probative value).

Those cases, however, were decided before the adoption of the Texas Rules of Evidence.[4] Since their adoption, the rules of evidence have provided that "[i]nadmissable hearsay admitted without objection shall not be denied probative value merely because it is hearsay." Tex. R. Evid. 802. As the supreme court has observed, "[Rule 802] is not ambiguous and requires no explication." *Texas Commerce Bank v. New*, 3 S.W.3d 515, 517 (Tex. 1999) (holding unobjected-to hearsay is probative evidence); *see also In re R.L.*, No.03-99-00334-CV, 2000 Tex. App. LEXIS 471, at *5 (Tex. App.—Austin 2000, no pet.) (observing proposition that

---

[4] Adopted in 1982, to be effective on September 1, 1983.

unobjected-to hearsay lacks probative value rendered invalid by rule 802). Despite Smith's assertion that she objected to the appraisal and the trial court overruled her objection, the record shows that the appraisal was admitted without objection. The tax appraisal, therefore, constituted some probative evidence of the property's value on which the trial court could have relied. *New*, 3 S.W.3d at 517.

The value of a community asset on which there is disputed evidence is a question of fact. Tex. Fam. Code Ann. § 6.711(2) (West 2006). As the trier of fact, it was up to the trial court to judge the credibility of the witnesses, weigh the testimony, accept or reject any testimony, and resolve conflicts in the evidence. *Leesboro Corp. v. Hendrickson*, 322 S.W.3d 922, 926–27 (Tex. App.—Austin 2010, no pet.); *Liberty Mut. Ins. Co. v. Burk*, 295 S.W.3d 771, 777 (Tex. App.—Fort Worth 2009, no pet.). We "will not disturb a trial court's resolution of conflicting evidence that turns on the credibility or weight of the evidence." *Ennis v. Loisear*, 164 S.W.3d 698, 706 (Tex. App.—Austin 2005, no pet.) (citing *Benoit v. Wilson*, 239 S.W.2d 792, 796 (Tex. 1951)). As long as the evidence falls "within [the] zone of reasonable disagreement," we cannot substitute our judgment for that of the fact finder. *See City of Keller*, 168 S.W.3d at 822.

The trial court heard the conflicting opinions on the value of the property, rejected the opinions of Gray and Smith, and accepted the value in the tax appraisal. On the record before us, we conclude that the evidence of the property's value was legally and factually sufficient, and in light of the broad discretion vested in the trial court in dividing the property of parties in a divorce, we cannot say that the trial court abused its discretion in its valuation of the Valley Hill property. *See City of Keller*, 168 S.W.3d at 822; *Cain*, 709 S.W.2d at 176; *Penick*, 783 S.W.2d at 198. We overrule Smith's sixth issue.

**Division of Community Estate**

In her seventh and eighth issues, Smith complains that the trial court abused its discretion in dividing the community estate because the effect was to award the entire community estate and part of Smith's separate estate to Grayson. Smith fails to cite any authority or portion of the record in support of these arguments and has therefore waived these issues. *See* Tex. R. App. P. 38.1(i) (requiring that contentions on appeal be supported by clear and concise arguments and appropriate citations to authorities and record); *In re A.D.A.*, 287 S.W.3d 382, 389 (Tex. App.—Texarkana 2009, no pet.). Even had Smith not waived issues seven and eight, however, we find these arguments to be cumulative of errors Smith asserts in issues one through six. We overrule Smith's seventh and eighth issues.

## CONCLUSION

Having overruled Smith's issues, we affirm the district court's final divorce decree.[5]

_____

Melissa Goodwin, Justice

Before Justices Puryear, Henson, and Goodwin

Affirmed

Filed: October 12, 2011

_____

[5] Smith filed a motion for leave to file a supplemental reply brief in response to Grayson's objection to oral argument, which is pending before this Court. We dismiss the motion as moot.