

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00433-CV

_____

M.G., Appellant

V.

T.G., Appellee

On Appeal from the 467th District Court
Denton County, Texas
Trial Court No. 20-2472-462

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

In this restricted appeal, we consider whether sufficient evidence supports the property division, child support, and attorney's fees ordered in a default divorce and SAPCR.[1] Because the evidence does not support the property division and the total child-support and attorney's-fees awards, we reverse the judgment in part and remand the case for a limited new trial.

### Background

Appellant M.G. and Appellee T.G. married in 2016 and then had two children. The couple separated in 2020. In March 2020, M.G. filed for divorce. In both March and November 2020, she absconded with both children, who were found by law enforcement. T.G. filed a counterpetition for divorce.

M.G. answered some discovery, but the parties did not exchange or file sworn inventories of their property.[2] After responding to T.G.'s discovery requests, M.G.'s counsel moved to withdraw from representation because she had "not been able to effectively communicate with" M.G. The trial court allowed M.G.'s counsel to withdraw in mid April 2021, a little over a month and a half before the June 7, 2021 trial setting. M.G. took no further action in the trial court.

---

[1]A SAPCR is a suit affecting the parent–child relationship. *See* Tex. Fam. Code Ann. § 101.032(a).

[2]M.G.'s counsel said in her forwarding email that M.G. "basically has no financial information" and that counsel understood T.G. "made all of the financial payments for obligations while they were living together."

Although T.G. appeared for the trial, M.G. did not. T.G. testified about the circumstances leading to the divorce, including M.G.'s mental-health and substance-abuse problems—both before and after they sought a divorce—as well as M.G.'s arrests and Child Protective Services involvement[3] during the divorce's pendency. T.G. also testified that their 2016 car that M.G. had been driving since October 2021 was impounded in March 2021 and he had to pick it up. The car appeared to have been crashed on multiple occasions; had writing on the console and a cigarette burn inside; was full of food, garbage, clothing, and other items; and reeked of cigarettes. According to T.G., the car was totaled.

T.G. testified that he and the children were living in a home that he and M.G. had bought after marrying; its 2020 appraised value was "about $281,000," and he estimated their equity in the home to be $193,000. T.G. expected to continue making the mortgage payments and wanted to remain living there with the children.[4]

T.G. testified that he was seeking $130 a month for the children's health insurance, child support from January 2021 through June 2021, and prospective child

---

[3]CPS, a Texas Department of Family and Protective Services division, became involved with M.G. and the children in March 2020 after M.G. filed for divorce and alleged that T.G. had sexually abused their daughter. CPS ruled out the allegations.

[4]Before her counsel withdrew, M.G. had filed an amended petition in which she sought to have the home sold and the proceeds divided. She also asked the trial court to confirm as her separate property "all property [she] owned and claimed . . . before her marriage" and asserted a claim for reimbursement to her separate estate for community-estate contributions.

support based on what he estimated M.G.'s earning capacity to be based on her education and work experience: $15 per hour.[5] T.G. also testified that M.G. was the beneficiary of a trust fund created before their marriage and that he had no access to or control over that fund.

The trial court admitted a summary of T.G.'s proposed relief, in which he sought to have the following property awarded to him:

- the marital residence "with all equity, furniture, furnishings, fixtures and items located" there and all associated debt and tax obligations;

- a 2008 truck and the totaled 2016 car;

- "[a]ll financial accounts, retirement accounts, and other assets in his possession or subject to his control";

- "[h]is personal belongings, including computers, clothes, and jewelry"; and

- "all credit card debt or loans in his name."

T.G. also asked the trial court to award M.G.

- "[a]ll financial accounts, retirement accounts, and other assets in her possession or subject to her control";

- "[h]er personal belongings, including computers, clothes, and jewelry";

- "all credit card debt or loans in her name"; and

- "[a]ny outstanding medical bills, psychiatric bills, criminal fees or fines, in her name."

---

[5]He estimated that at $15 per hour, her child-support obligation would be $500 per month.

Finally, T.G. sought an order for M.G. to pay his attorney $25,000 for fees through trial and $469 for expenses.[6]

The trial court rendered its ruling on the record. It granted the divorce and T.G.'s requested property division, child support, $130 monthly medical-insurance reimbursement, and attorney's fees. The trial court also named T.G. the children's sole managing conservator with the exclusive right to determine their residence.[7]

On July 1, 2021, the trial court signed the final judgment incorporating its trial rulings. M.G. filed this restricted appeal a little over five months later.

## Issues and Standards of Review

In a single issue with five subissues, M.G. challenges the evidentiary sufficiency of the prospective and retroactive child-support awards, the property division, and the attorney's-fees award.[8] We apply the same standard of review—abuse of discretion—to her child-support and property-division challenges. *See Sandone v. Miller-Sandone*,

---

[6]Both T.G. and his counsel testified about the amount of attorney's fees and expenses he had incurred. The expenses were for records-subpoena and witness fees.

[7]M.G. has not challenged the part of the judgment granting a divorce, nor has she challenged any of the judgment's non-child-support SAPCR provisions—conservatorship and possession and access.

[8]M.G. argues in her first subissue that she has met the requirements for a restricted appeal. T.G. agrees that M.G. has met the jurisdictional requirements for bringing a restricted appeal but does not concede error apparent on the face of the record. *See* Tex. R. App. P. 26.1(c), 30; *In re S.W.*, 614 S.W.3d 311, 313 (Tex. App.—Fort Worth 2020, no pet.). Therefore, we will review her remaining subissues about error. *See Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (holding that restricted-appeal error review includes sufficiency review).

116 S.W.3d 204, 205 (Tex. App.—El Paso 2003, no pet.) ("Most of the appealable issues in a family[-]law case are evaluated against an abuse of discretion standard, be it the issue of property division incident to divorce or partition, conservatorship, visitation, or child support.").

A trial court abuses its discretion if it acts arbitrarily or unreasonably or if it does not analyze or apply the law properly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). Although a trial court does not abuse its discretion by deciding based on conflicting evidence, sufficient evidence must nevertheless support the decision; therefore, the traditional sufficiency-review standards are relevant to our review. *Hamilton v. Hamilton*, No. 02-19-00211-CV, 2020 WL 6498528, at *3 (Tex. App.—Fort Worth Nov. 5, 2020, no pet.) (mem. op.); *In re S.C.*, No. 02-17-00377-CV, 2018 WL 5289370, at *3 (Tex. App.—Fort Worth Oct. 25, 2018, no pet.) (mem. op.); *see Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018) (legal-sufficiency standard); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g) (factual-sufficiency standard). Stated another way, when we review if the trial court abused its discretion by ruling based on legally or factually insufficient evidence, "we must determine (1) whether the trial court had sufficient evidence on which to exercise its discretion and (2) whether the trial court acted reasonably in applying its discretion to those facts." *Hamilton*, 2020 WL 6498528, at *3.

## Prospective and Retroactive Child Support

In her second and third subissues, M.G. argues that the prospective and retroactive child-support awards are not supported by sufficient evidence because T.G. did not present evidence establishing her net monthly resources.

### Applicable Law

The Family Code requires a trial court determining child support to calculate the obligor's net resources available to pay that support. Tex. Fam. Code Ann. § 154.062(a); *see id.* § 154.061(a) ("Whenever feasible, gross income should first be computed on an annual basis and then should be recalculated to determine average monthly gross income."). In addition to wages, "[r]esources include . . . trust income." *Id.* § 154.062(b)(1), (5).

A trial court cannot adequately calculate net resources without some evidence of a substantive and probative character. *Marquez v. Moncada*, 388 S.W.3d 736, 739 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see In re L.A.-K.*, 596 S.W.3d 387, 397 (Tex. App.—El Paso 2020, no pet.). Once a party's net resources are established, the trial court must apply the Family Code's guidelines to calculate the obligor's monthly child-support obligation. *Stringfellow v. Stringfellow*, 538 S.W.3d 116, 118 (Tex. App.—El Paso 2017, no pet.) (citing Tex. Fam. Code Ann. § 154.122(a)); *see Knight v. Knight*, 131 S.W.3d 535, 540 (Tex. App.—El Paso 2004, no pet.) (explaining process and citing governing Family Code provisions).

**Analysis**

The record does not show whether M.G. was employed at the time of trial. In her February 2021 interrogatory responses, she stated that she had been working at Hooters "for a short period of weeks" but other than that, she had not been employed since May 6, 2016. T.G. testified that M.G. lacked only "about 20 to 30 hours" of credit to obtain her bachelor's degree. He estimated that she could earn "about $15 an hour" based on her education and work experience. T.G. also testified that M.G. had access to a trust fund from which she could pay child support. Although M.G. had not received regular monthly trust-fund payments, she relied on her mother to make payments from the fund "on a case-by-case basis." According to T.G., "if [M.G.] did need a monthly amount, her mom would be more than happy to provide that for her."[9] T.G. asked the trial court to award him retroactive and prospective child support of $500 per month based on M.G.'s estimated earning capacity of $15 an hour.

T.G. did not provide evidence of M.G.'s past or present resources; he merely estimated her earning ability via work and possibly her trust fund. Without evidence about the amount of resources available to her, the Family Code required the trial court to presume that M.G. worked 40 hours per week earning the federal minimum wage. *See* Tex. Fam. Code Ann. § 154.068(a) ("In the absence of evidence of a party's

---

[9]Records admitted at trial noted that M.G.'s relationship with her mother was "strained."

8

resources, . . . the court shall presume that the party has income equal to the federal minimum wage for a 40-hour week to which the support guidelines may be applied.").[10]

Therefore, without a statutory basis to set child support based solely on M.G.'s earning potential and in the absence of evidence of M.G.'s total net resources, the trial court could rely only on the current federal minimum wage: $7.25 an hour. *See* 29 U.S.C.A. § 206(a)(1)(C). Thus, a person earning the federal minimum wage would gross $290 per week and $15,080 per year ($290 multiplied by 52), or $1,257 monthly. *L.A.-K.*, 596 S.W.3d at 398. Under the statutory child-support guidelines, a person

---

[10]T.G. instead cites Family Code Section 154.0655, which directs the trial court to consider a list of background circumstances—including education and job skills—"[i]n the absence of evidence of a party's resources." Tex. Fam. Code Ann. § 154.0655(c). But this section applies only to a child-support proceeding pending on or filed after September 1, 2021. Act effective September 1, 2021, 87th Leg., R.S., ch. 552, § 14. Therefore, this section could not have applied at the time of trial.

T.G. also argues that the trial court could have instead relied on Section 154.066 to calculate child support based solely on M.G.'s earning capacity. *Id.* § 154.066 ("If the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor."). But the record does not support child support based on that section because (1) the trial court did not make the required express finding that M.G. was intentionally unemployed or underemployed, *see Iliff*, 339 S.W.3d at 80; *In re A.A.T.*, 583 S.W.3d 914, 924 (Tex. App.—El Paso 2019, no pet.); and (2) Section 154.066 requires proof of the obligor's current earnings, *A.A.T.*, 583 S.W.3d at 924 (explaining that under Section 154.066, obligor must first provide proof of current earnings and then obligee has burden to prove obligor is intentionally unemployed or underemployed, which obligor can rebut with, among other evidence, proof that employment situation is caused by "health needs").

with two children must pay 25 percent of her monthly net resources. *See* Tex. Fam. Code Ann. § 154.125(b). Thus, even without adjusting for the difference between gross and net wages, in the absence of evidence about the amount of M.G.'s income, the trial court could have ordered her to pay no more than $314.25 per month.[11] *See L.A.-K.*, 596 S.W.3d at 398.

And although T.G. presented evidence that M.G. had access to a trust fund, he presented no evidence of any particular amount to which she had access, and he testified that whether M.G. could obtain money from the trust account depended on her mother.[12] Even with T.G.'s assertion that M.G.'s mother would give her whatever

---

[11]T.G. also contends that ample evidence supported the trial court's deviating from the established child-support guidelines due to her trust-fund access, pre-divorce lack of visitation with the children, and post-divorce supervised access to the children. *See* Tex. Fam. Code Ann. § 154.123(a)–(b) (allowing trial court to deviate from guidelines if evidence—including child-specific needs, both parents' net resources and circumstances, and "amount of time of possession of and access to a child"—rebuts presumption that applying guidelines is in child's best interest). But the judgment states that the child-support order was "based on [M.G.'s] earning ability to obtain full time employment at the rate of at least . . . $15.00 . . . per hour." Also, T.G. himself testified about M.G.'s mental-health and substance-abuse struggles, as well as her arrests during the divorce's pendency. Other evidence showed that after moving out of their home, M.G. lived with her aunt and also lived in shelter housing that CPS had helped find for her. Furthermore, in discussing M.G.'s absence with the trial court, T.G.'s counsel represented that M.G. had been arrested and hospitalized multiple times, that another warrant had been issued for her arrest, and that counsel did not know if M.G. even had access to her email. Thus, the record does not show that the trial court intended to deviate from the required federal-minimum-wage default provision.

[12]For this reason, Family Code Section 154.067, cited in T.G.'s brief, also does not apply to this record. Tex. Fam. Code Ann. § 154.067(a) (providing that trial court may, when appropriate, "assign a reasonable amount of deemed income attributable

10

she needed, the trial court still had no way to know how much trust money would be available to M.G. and when.

Thus, contrary to T.G.'s argument, the trial court heard no substantive and probative evidence on which to base a $500 monthly child-support obligation.[13] We sustain M.G.'s second and third subissues.

## Property Division

M.G. contends in her fourth subissue that no evidence supports the judgment's property division. According to M.G., T.G.'s testimony solely about the marital

---

to assets that do not currently produce income" and if doing so must consider whether that property can be liquidated); *L.A.-K.*, 596 S.W.3d at 398 ("[T]here is no basis in the record upon which the trial court could deem income attributable to Father's assets because there is no evidence of how much is in each fund and whether or under what circumstances any of those funds can be liquidated.").

[13]M.G. also contends that T.G. did not properly request retroactive child support in his pleadings. *See In re Marriage of Day*, 497 S.W.3d 87, 90 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (addressing in restricted appeal whether judgment conformed to pleadings); *see also* Tex. R. Civ. P. 301; *Martinez v. Martinez*, 61 S.W.3d 589, 590 (Tex. App.—San Antonio 2001, no pet.) ("Specific notice is required when retroactive child support is being sought." (quoting *In re J.G.Z.*, 963 S.W.2d 144, 148 (Tex. App.—Texarkana 1998, no pet.)). T.G. did not seek child support for a time before either divorce petition's filing date; instead, he sought child support accruing while his counterpetition was pending—from January 2021 to June 2021. The language in his counterpetition requesting a temporary order requiring M.G. "to provide child support and medical support as deemed appropriate by the Court" provided M.G. fair and adequate notice that T.G. sought child support during the case's pendency but after the counterpetition's filing. *See, e.g.*, *Kebodeaux v. Kebodeaux*, No. 04-20-00147-CV, 2021 WL 3639814, at *2 (Tex. App.—San Antonio Aug. 18, 2021, no pet.) (mem. op.); *Taylor v. Taylor*, 337 S.W.3d 398, 401 (Tex. App.—Fort Worth 2011, no pet.) (op. on reh'g).

residence's value—without any documentary evidence or testimony showing any other property values—does not sufficiently support the property division. We agree.

**Applicable Law**

A divorce's property division must be "just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001. Although the trial court need not equally divide the community estate, its division must be equitable and supported by a reasonable basis. *Sandone*, 116 S.W.3d at 207. Even a default judgment's property division must be supported by sufficient proof that it is just and right. *See* Tex. Fam. Code Ann. § 6.701; *Sandone*, 116 S.W.3d at 207; *see also Giles v. Giles*, No. 01-20-00571-CV, 2022 WL 2251814, at *8 (Tex. App.—Houston [1st Dist.] June 23, 2022, no pet.) (mem. op.); *Wilson v. Wilson*, 132 S.W.3d 533, 536 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

**Analysis**

Here, although T.G. testified to the value of what is likely the parties' most valuable asset[14] and alluded to M.G.'s trust-fund access,[15] he provided no evidence of the value of any other property, much less the extent or total value of the community

---

[14]T.G.'s testimony was sufficient evidence of the home's value. *See In re Marriage of Nadar*, No. 05-17-00537-CV, 2018 WL 1373900, at *6 (Tex. App.—Dallas Mar. 19, 2018, pet. denied) (mem. op.).

[15]Nothing in the decree confirms M.G.'s trust fund as her separate property or divides it as community property. *See Cleaver v. Cleaver*, 935 S.W.2d 491, 493–94, 497 (Tex. App.—Tyler 1996, no pet.).

estate. Thus, the trial court did not have sufficient evidence upon which to base a just-and-right comparison. *See Giles*, 2022 WL 2251814, at *10; *Watson v. Watson*, 286 S.W.3d 519, 524 (Tex. App.—Fort Worth 2009, no pet.).

T.G. argues that sufficient evidence supports an inequitable property division, citing M.G.'s destruction of the car, her abandonment of the children and home, her mental-health and substance-abuse problems, and her criminal and CPS history affecting the marriage and family. Although this evidence is relevant to a disproportionate-division determination, without evidence of the community estate's total value, no court could determine whether the property division is actually disproportionate. *See Sandone*, 116 S.W.3d at 207–08 ("Without the ability to determine the size of the community pie, we can make no determination that the slices awarded to each spouse were just and right."). Therefore, we conclude that M.G. has shown error in the property division. *See Watson*, 286 S.W.3d at 525 (reversing default decree in similar circumstances); *see also In re Marriage of Flores*, No. 13-20-00313-CV, 2021 WL 6037665, at *4 (Tex. App.—Corpus Christi–Edinburg Dec. 21, 2021, no pet.) (mem. op.) (same); *Wilson*, 132 S.W.3d at 537–38 (same); *Sandone*, 116 S.W.3d at 208 (same); *Haley v. Haley*, 713 S.W.2d 801, 802–03 (Tex. App.—Houston [1st Dist.] 1986, no writ) (same).

T.G. relies on cases declining to find property-division error urged by appellants who did not provide the trial court with their own evidence of property value. *See Delgado v. Delgado*, 587 S.W.3d 450, 454–56 (Tex. App.—El Paso 2019, no

13

pet.) (first citing *Howe v. Howe*, 551 S.W.3d 236, 254 (Tex. App.—El Paso 2018, no pet.); then citing *Capellen v. Capellen*, 888 S.W.2d 539, 543 (Tex. App.—El Paso 1994, writ denied)); *LeBlanc v. LeBlanc*, 761 S.W.2d 450, 453 (Tex. App.—Corpus Christi–Edinburg 1988) (citing *Mata v. Mata*, 710 S.W.2d 756, 758 (Tex. App.—Corpus Christi–Edinburg 1986, no writ)), *writ denied*, 778 S.W.2d 865 (Tex. 1989); *Wallace v. Wallace*, 623 S.W.2d 723, 724 (Tex. App.—Houston [1st Dist.] 1981, writ dism'd). But these are not default cases: unlike here, the parties in those cases participated at trial and had the opportunity to present their own evidence, so these cases are inapposite.

Because T.G. did not present sufficient evidence to support the default property division, we sustain M.G.'s fourth subissue.

## Attorney's Fees

M.G. argues in her fifth subissue that parts of the attorney's fees award have no evidentiary support. We agree.

### Applicable Law

A trial court may award attorney's fees in a SAPCR. Tex. Fam. Code Ann. § 106.002. A trial court may also apportion attorney's fees as part of a just-and-right property division. *Capellen*, 888 S.W.2d at 544–45. But any awarded fees must be supported by sufficient reasonableness-and-necessity evidence. *See In re M.L.*, No. 14-19-00037-CV, 2021 WL 281071, at *5–6 (Tex. App.—Houston [14th Dist.] Jan. 28, 2021, no pet.) (mem. op.).

14

To calculate attorney's fees, the trial court must first determine the reasonable hours worked multiplied by a reasonable hourly rate; the fee claimant bears the burden to prove both. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). At a minimum, the claimant must prove (1) the particular services performed, (2) who performed them, (3) approximately when they were performed, (4) the reasonable time required to perform them, and (5) the reasonable hourly rate for each person performing them. *Id.* at 498, 502. Reasonableness and necessity do not depend solely on the contractual fee arrangement between the prevailing party and its attorney; the base lodestar calculation should reflect hours reasonably expended for litigation-necessary services and a reasonable hourly rate required to provide those services. *Id.* at 498–99; *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012) (explaining that trial court calculates lodestar). Courts presume "that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Rohrmoos*, 578 S.W.3d at 499.

**Analysis**

The trial court admitted into evidence T.G.'s retainer agreement and his attorney's invoices and billing records. T.G. testified that he believed the fees were reasonable and necessary. T.G.'s counsel also testified that she practices family law in the DFW area at a $300 hourly rate and that her board-certified boss—who also worked on the case—bills at a $495 hourly rate but discounted that rate for this case.

15

Counsel described the need to obtain an emergency order for the children's return and her attempts to obtain discovery; she also provided copies of M.G.'s discovery responses, which the trial court admitted. According to counsel, "the fees incurred by" T.G. were reasonable and necessary.

M.G. challenges $5,696.59 of the $25,000 attorney's-fees award because the billing records support only $19,303.41. The last time entry listed is on June 2, 2021—five days before trial. Although T.G. testified that he had incurred expenses through trial in addition to the billed amounts—$25,000 total—his counsel did not testify to the total hours worked by attorneys and legal assistants from June 2, 2021, through the June 7, 2021 trial date; nor did she testify to the reasonableness and necessity of any specific work done between June 2 and June 7, 2021.

Whether attorney's fees are reasonable and necessary requires expert testimony. *Lederer v. Lederer*, No. 14-21-00012-CV, 2022 WL 11551156, at *6 (Tex. App.—Houston [14th Dist.] Oct. 20, 2022, no pet.) (mem. op.). Thus, the additional $5,696.59 not testified to by T.G.'s counsel or supported by the billing records was not supported by sufficient proof. *See Hoffman v. Mena*, No. 03-19-00409-CV, 2021 WL 2460637, at *11 (Tex. App.—Austin June 17, 2021, no pet.) (mem. op.); *Drabek v. Cavazos*, No. 13-14-00063-CV, 2014 WL 4402501, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 29, 2014, pet. denied) (mem. op.) (collecting cases).

M.G. also argues that insufficient evidence supports the amounts charged for an unidentified person with the initials SJT, contending that it is unclear whether SJT

16

is an attorney or paralegal and that T.G. presented no evidence of that person's qualifications or hourly rate's reasonableness. Regardless of whether SJT is a paralegal or attorney,[16] we agree that T.G. provided no evidence to support that person's qualifications or whether that person's $175 hourly rate was reasonable.

Although T.G.'s counsel testified that her paralegal's hourly billing rate was $35, she did not testify that rate was reasonable. *See Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 149 (Tex. App.—Houston [1st Dist.] 1986, no writ) (noting that agreement to pay certain sum per hour is not proof of reasonableness); *see also Mortensen v. Villegas*, 630 S.W.3d 355, 368 (Tex. App.—El Paso 2021, no pet.). Likewise, she did not testify about the reasonableness of any $175 hourly rate for an associate attorney. *See Martinez Jardon v. Pfister*, 593 S.W.3d 810, 840 (Tex. App.—El Paso 2019, no pet.). Additionally, although the trial court admitted résumés showing T.G.'s counsel's and her boss's qualifications, the record contains no résumé or other evidence showing SJT's qualifications that might support a conclusion that the billed $175 hourly rate was reasonable. Accordingly, we conclude that no evidence supports the reasonableness of $6,693.75, the total amount billed for SJT's fees. *See, e.g., Mahmoud v. Jackson*, No. 05-21-00302-CV, 2022 WL 2167683, at *8 (Tex. App.— Dallas June 16, 2022, no pet.) (mem. op.); *Arnold v. Addison*, No. 05-20-00001-CV,

---

[16]From the names and billing rates identified in the retainer agreement, it appears that SJT is an associate attorney.

2021 WL 5984875, at *16 (Tex. App.—Dallas Dec. 17, 2021, no pet.) (mem. op.); *Mortensen*, 630 S.W.3d at 368.

Because no evidence supports the trial court's award of $12,390.34[17] of the attorney's fees, we sustain M.G.'s fifth subissue.

## Conclusion

Because we have sustained M.G.'s second through fifth subissues, we also sustain her first subissue, in which she contends that she has shown error apparent on the record's face. Accordingly, we reverse the challenged parts of the trial court's judgment—the child-support assessment, property division, and $12,390.34 of the attorney's-fees award—but we affirm the remainder—the divorce grant, non-child-support SAPCR rulings, and $12,609.66 in attorney's fees. *See, e.g., Carter v. Carter*, No. 09-13-00461-CV, 2015 WL 4571315, at *6 (Tex. App.—Beaumont July 30, 2015, no pet.) (mem. op.); *Wilson*, 132 S.W.3d at 539. We remand the case for a limited new trial solely on the child-support assessment and property division.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: February 23, 2023

---

[17]This amount is the sum of $5,696.59 and $6,693.75.